THE STATE ex inf. CROW, Attorney-General, v. SMITH.

In Banc, December 5, 1899.

1. **Officers**: FAILURE TO ELECT: TENURE: VACANCY. Under the Constitution of Missouri, all officers regularly elected or appointed to office, unless it is otherwise provided by law, hold until their successors are elected or appointed and qualified. And a failure to elect a successor at the regular time for the election of such officers, does not create a vacancy, and does not authorize any one to appoint a successor.

2. **Justice of the Peace in St. Louis**: FAILURE TO ELECT: APPOINTMENT: TIE VOTE. There is no election to the office of justice of the peace in St. Louis if the two candidates receive the same number of votes. Nor is a vacancy created in the office by such failure to elect, but the person then holding the office, if he has been regularly appointed or elected and has qualified, holds the office until his successor is chosen at the next regular election for the election of justices of the peace in said city, and has qualified.

*Quo Warranto.*

WRIT OF OUSTER AWARDED.

EDWARD C. CROW, Attorney-General, and JESSE A. McDONALD for relator.

(1) Taking the oath of office by respondent, appointing a clerk of the court, and demanding possession of all the

dockets and records thereof, is a sufficient user of the office to sustain an information in *quo warranto*.  State ex rel. v. Graham, 13 Kan. 136; State ex rel. v. Meek, 129 Mo. 431. (2)  An office of justice of the peace in the city of St. Louis is not vacant so long as it is occupied in the manner provided by section 37, article VI, and section 5, article XIV, Constitution 1875, and the Act of 1891 (Laws 1891, p. 175), by an incumbent who is legally qualified to exercise the powers and discharge the duties pertaining thereto.  A failure of the people to make a choice through any casualty at the regular election does not create a vacancy.  State ex rel. v. Jenkins, 43 Mo. 264; Com. v. Hanley, 9 Pa. St. 513; Eddy v. Kincaid, 28 Oregon 560; People ex rel. v. Edwards, 93 Cal. 156; People v. Lord, 9 Mich. 231; Carr v. Wilson, 3 L. R. A. 68; Lawrence v. Hanley, 84 Mich. 404; State ex rel. v. McKee, 69 Mo. 504; Badger v. U. S. ex rel., 93 U. S. 602; State ex rel. v. Thompson, 38 Mo. 193; People ex rel. v. Hardy, 8 Utah 74; State ex rel. v. Meilike, 81 Wis. 575; State ex rel. v. Harrison, 113 Ind. 437; State ex rel. v. Darby, 12 Ohio C. C. Rep. 235; Gosman v. State ex rel., 106 Ind. 203; Ijams v. Duvall, 85 Md. 259; State ex rel. v. Marr, 68 N. W. Rep. 9; State ex rel. v. Compson, 54 Pac. Rep. 349; Koerner v. State ex rel., 148 Ind. 167; State ex rel. v. Henderson, 4 Wyoming 437; State ex rel. v. Seay, 64 Mo. 101; Sparks v. Bank, 3 Del. Ch. Rep. 296; People ex rel. v. Fritchie, 28 N. Y. Sup. 600; Kimberlin v. State ex rel., 130 Ind. 122; State ex rel. v. Linkshauer, 142 Ind. 195; State Savings Bank v. Hunt, 72 Mo. 601; State ex rel. v. Smith, 87 Mo. 160; State ex rel. v. Ranson, 73 Mo. 92; Meyer v. Culver, 35 Pac. Rep. 984; Brady v. Howe, 50 Miss. 622; McCrary on Elections (4 Ed.), sec. 349.

GEORGE E. SMITH for respondent.

(1)  The act of 1891 (Laws 1891, p. 175), fixes the official term of a justice elected under it, at four years flat.

Both the beginning and the end of the term are fixed, and the interval between is exactly four years.    The language of the first section is:    "There shall be elected on the general election day A. D. 1894, and every four years thereafter, one justice," etc.    This limits the official term to four years.    There is no provision in the act that a justice shall hold over until his successor is elected and qualified.    The seventh section of the act fixes the term of a person appointed by the judges to fill a vacancy.    In such case it is for "the unexpired term, and until his successor be qualified."    This seventh section is clearly within the grant of power contained in art. IV, sec. 37 of the Constitution.    (2)    The term of Haughton expired November 8, 1898.    The written appointment given to Haughton by the judges conformed to the law.    It was, "to fill the unexpired term of said Patrick Sheehan."    But his commission issued by the mayor under that appointment reads, "for said expired term ending on the first Tuesday in November, 1898 . . . .and until his successor shall be duly elected and qualified."    Thus, the commission attempts to amend the statute under which the appointment was made by extending the term beyond that authorized by law.    (3)    The duration of the term of a public officer can not be extended by his commission beyond the limit fixed by the law under which he was appointed.    State ex rel. v. Perkins, 139 Mo. 116.    No successor was chosen to succeed Haughton at the general election held November 8, 1898.    That election resulted in a tie vote, and no choice between Griffin and Kramer.    "The Constitution does not provide how tie votes for justices of the peace shall be settled, and does not authorize the General Assembly to make any such provision.    It leaves it with the people to elect, or some officer to appoint, as may be regulated by law."    State ex rel. v. Kramer, 150 Mo. 89.    (4)    Respondent was lawfully appointed on June 9, 1899, to succeed Haughton.    His official term under his appointment had expired on November 8, 1898, seven months before.    No one had been chosen to succeed him

at the general election then held.   No further election could
be held under the act until the general election in November,
1902.   Of course the office was not vacant in the sense that
no one was occupying it, but it was vacant in the legal sense,
in that the incumbent was holding over after his term had fully
expired, by sufferance, a mere tenant at will of the appointing
power.   "The fact that the incumbent remains clothed with
official authority, in furtherance of a wise provision of public •
policy and public law, can not enlarge the boundaries of his
official term, or arrest the operation of the power of appoint-
ment or election."   State ex rel. v. Thomas, 102 Mo. 91;
State ex rel. v. Stonestreet, 99 Mo. 361; State ex rel. v. Man-
ning, 84 Mo. 661; State ex rel. v. Spitz, 127 Mo. 248; State
ex rel. v. Powles, 136 Mo. 376; State ex rel. v. Perkins, 139
Mo. 106; State to use v. Fulkerson, 10 Mo. 681; State ex rel.
v. Ewing, 17 Mo. 515; State ex rel. v. Emerson, 39 Mo. 80;
State ex rel. v. Conrades, 45 Mo. 45; State ex rel. v. McGrath,
64 Mo. 139.

MARSHALL, J.—This is a proceeding by *quo warranto*,
instituted in this court by the Attorney-General, *ex officio*, to
oust defendant from the office of justice of the peace of the
fourth district in the city of St. Louis.   The facts are these:
At the regular election in 1894 Patrick Sheehan was elected
and thereafter duly qualified as the justice of the peace for
said district.   Before the expiration of his regular term of
four years, he died, and in May, 1896, Richard B. Haughton
was regularly appointed to fill the vacancy thus occasioned, and
thereafter duly qualified and was commissioned to fill the
unexpired term.   At the next regular time for electing justices
of the peace, to wit, at the regular election in 1898, James
Griffin and Siegmund L. Kramer were the regular nominees
for said office.   The election resulted in a tie vote.   After-
wards the mayor of St. Louis appointed Kramer to said office
upon the theory that in St. Louis he was vested with the powers

of the county courts and that in case of a tie vote he was entitled to "decide" the tie. Upon *quo warranto* this court denied the validity of the appointment and ousted Kramer from the office. [State ex inf. v. Kramer, 150 Mo. 89.] Thereafter on the ninth of June, 1899, the judges of the circuit court, the St. Louis court of criminal correction and the probate court, in St. Louis, appointed the defendant to said office, reciting in the order of appointment, "having been duly notified that there was a vacancy in the office of justice of the peace of the fourth justice of the peace district, caused by a failure to elect at the last general election, Tuesday, November 8th, 1898," and further reciting that in making such appointment they acted pursuant to the Act of April 23, 1891 (Laws 1891, p. 175). The mayor of the city of St. Louis upon the faith of such appointment thereupon commissioned the defendant as such justice of the peace "for the unexpired term ending on the first Tuesday after the first Monday in November, 1902, unless sooner removed from office, and until his successor shall be duly elected and qualified." The defendant thereupon attempted to enter upon the duties of the office, and has ever since been attempting to exercise its functions. At all times, however, since his appointment in 1896, said Haughton has continued to act as justice of the peace for said district, refusing to recognize the termination of his term by the election and qualification of his successor, and refusing also to turn over the records of said office to any one.

I.

This case lies within narrow limits. If the office of justice of the peace for the fourth district, in the city of St. Louis, was *vacant*, as recited by the judges who appointed defendant, on the ninth of June, 1899, then those judges, under the power conferred upon them by section 7 of the Act of 1891 (Laws 1891, p. 176) had the power to appoint the defendant and his title to the office is good; otherwise not.

In the Kramer case, *supra*, it was held that in case of a
tie vote there was no legal election, and it follows that if there
was no legal election in 1898 for the office in question, no
successor has yet been legally *elected* to succeed Haughton, for
he was appointed in 1896 under section 7 of the Act of 1891,
to fill Sheehan's unexpired term, which ended at the regular
election in 1898, and until his successor should be legally
elected, as that section provides such appointees shall hold.

There is no merit in defendant's contention that under
the Act of 1891, justices of the peace in St. Louis hold for a
fixed term of four years, and not until their successors are
elected and qualified.  True the first section of that act requires
an election at the general election in 1894 and every four
years thereafter, and does not prescribe that the person so
elected shall hold until his successor is elected, but such a
provision was not necessary in the statutes to accomplish this
result, for section 5 of article XIV of the Constitution of
Missouri provides:  "In the absence of any contrary provis-
ion, all officers now or hereafter elected or appointed, subject
to the right of resignation, shall hold office during their
official terms, and until their successors shall be duly elected or
appointed and qualified."  There is no contrary provision in
the Act of 1891, hence Haughton's term continued until the
regular election in 1898 and also until his successor should
be duly elected and qualified, and such continuance after the
election in 1898, was as much a part of his term as that which
preceded that election.  [State ex rel. v. Ranson, 73 Mo.
l. c. 92.]

The appointment of defendant by the judges named was
expressly predicated upon the theory that a failure to elect a
successor to Haughton at the regular election in 1898, *ipso
facto*, created a vacancy in that office.  This is a misappre-
hension of the law in this State.  Whatever may be the rule
in other States, under their constitutions and statutes, it has
been the settled law in this State ever since the decision in
State v. Lusk, 18 Mo. 333, that the failure to *elect* a successor

to an office at the regular time for holding an election for that office, does not create a vacancy in such office, and does not, therefore, authorize any one to *appoint* a successor, and that if a person is so appointed as such successor he acquires no title. [State ex rel. v. Ranson, 73 Mo. l. c. 91, 94 and 95; State ex rel. v. McCann, 81 Mo. 479; State ex rel. v. Manning, 84 Mo. l. c. 663; State ex rel. v. Smith, 87 Mo. l. c. 160; State ex rel. v. McCann, 88 Mo. l. c. 390; State ex rel. v. McGovney, 92 Mo. l. c. 430; State ex rel. v. Powles, 136 Mo. l. c. 381.]

In McCann's case, 81 Mo. 479, Mullery was appointed in 1879 to fill a vacancy, for an unexpired term ending in 1882, and until his successor was elected and qualified.    Upon the theory that an appointee to the office of justice of the peace could only hold until the next regular election, McCann was elected to the office at the regular election in 1880; Mullery refused to surrender the office, McCann attempted to exercise the functions of the office.    On *quo warranto*, McCann was ousted, and it was held that a person appointed to fill a vacancy in the office of justice of the peace, held title until the next regular time for electing justices of the peace, so as to secure uniformity of tenure, and that an election at any other time was invalid and therefore conferred no title upon the person elected.

In Ranson's case, 73 Mo. 78, he was elected in 1876 for a term of four years, to the office of justice of the peace. Thereafter it was provided by section 2807, Revised Statutes 1879, that justices of the peace should be elected at the general election in 1882 and every four years thereafter and should hold their offices for four years.    At the general election in 1880 one Childs was elected as Ranson's successor, and commissioned for a term of two years.    Ranson refused to surrender the office, claiming that the election in 1880 was illegal, and that under section 2807 he was entitled to hold until the regular election in 1882.    On *quo warranto* against him his contention was sustained, and it was held that:    "The

object and intent of the legislature in framing section 2807, Revised Statutes, was to provide and fix a certain and uniform time at which the election of justices of the peace should take place  .  .  .  .  That the time intervening between the end of the four years and the election or appointment and qualification of his successor, is as much a part of his term of office, as the four years that preceded it  .  .  .  .  If the respondent was rightfully in office, there could be no vacancy, and consequently no warrant for construing Childs' commission for two years into a valid appointment as claimed by relator.   In all such cases it is immaterial whether the want of a successor results from a failure to hold an election" (or as here the failure to elect by reason of there being a tie vote), "the failure of the person elected to qualify, or from a lawful change in the time of holding an election."

In State ex rel. v. Seay, 64 Mo. 89, it appeared that at the regular election in 1868 Gale was elected circuit judge for a term of four years.   At the regular election in 1874 McCord was elected his successor, and he duly qualified, but two days before his term was to begin he died.   A special election was held in March, 1875, to fill the vacancy, and the defendant, Seay, was duly elected and properly qualified.   Gale refused to surrender the office claiming that as McCord died before entering upon the duties of the office there was no vacancy and hence the special election was void.   But on *quo warranto* against Seay it was held that a successor to Gale had been duly elected at the regular time for electing a judge for that court, and he had duly qualified, and this ended Gale's term and tenure, notwithstanding McCord died before entering upon the discharge of the duties of the office and before his term began, and hence there was a vacancy and a special election was properly ordered and Seay was entitled to hold the office.   It was pointed out, however, that if McCord had died after he was elected but before he had qualified there would have been no vacancy in the office and Gale would

have been entitled to hold over until the next regular time for holding an election to fill that office.

The cases relied on by the defendant do not support his contention that there was a vacancy in the office of justice of the peace for the fourth district in St. Louis. The case of State ex rel. v. Thomas, 102 Mo. 85, decided that the charter and ordinances of St. Louis, expressly provided for a special election in the exigencies present in that case.

In the case of State ex rel. v. Stonestreet, 99 Mo. 361, it was decided that when a regularly elected or appointed officer had served out his fixed term, he became a mere *locum tenens* until his successor was elected or appointed, and that such a successor had been legally appointed at the proper time in that case and hence such successor was entitled to the office.

State ex rel. v. Manning, 84 Mo. 661, and State ex rel v. Spitz, 127 Mo. 248, simply hold that *when there is a vacancy* in the office of justice of the peace, it is proper to fill the vacancy until the next regular election thereafter held, as the statutes then provided (the Act of 1891 changed the law so as to provide that the appointment shall be for the unexpired term) at which time an election to fill the unexpired term should be held. In both of these cases a successor to the incumbent had been elected and qualified. In the Manning case the successor died after he had been elected and qualified and entered upon the duties of the office, and in the Spitz case the successor resigned after being elected and qualified and after entering upon the duties of the office. There was therefore clearly a vacancy in the office, as defined in State ex rel. v. Seay, 64 Mo. 89.

In Powles' case, *supra*, his successor had been duly elected and qualified and, therefore, his tenure had ended and he was properly ousted.

In case of State ex rel. v. Perkins, 139 Mo. 106, it was held that an officer whose term is for a fixed time and until his successor is duly elected and qualified, is entitled to hold "until

his successor has been chosen and qualified," but that in that case a successor had been duly elected and qualified and hence the successor alone could rightfully exercise the powers and perform the duties of the office.

In the case at bar Haughton was appointed under section 7 of the Act of 1891, to fill the unexpired term of Sheehan, which ended at the regular election in 1898, and until his successor was duly elected and qualified. The attempted election of his successor in 1898 failed by reason of a tie vote. No successor was then elected and hence none qualified. Therefore no vacancy existed or occurred in the office. The effect was the same as if no election for a successor had been held in 1898. There being no vacancy there was no power in the judges named to appoint defendant to the office, either by virtue of the Act of 1891 or of any other statute, and hence their action was a nullity and defendant has no title to the office. Inasmuch as the Act of 1891 provided that there should be an election for justice of the peace, in St. Louis, at the regular election in 1894 "and every four years thereafter," and inasmuch as there was in legal intendment no election held in the fourth district in St. Louis for justice of the peace in 1898, there has been no successor yet elected for Haughton, and as the purpose of the lawmakers is that there shall be uniformity in the time of electing all justices of the peace, and as there is no special statute covering cases like this, it follows that there can be no legal election held to elect a successor for Haughton until the regular election in the year 1902, and that he has a right to continue to hold the office of justice of the peace for the fourth district, in the city of St. Louis, until a successor is elected at that time, and thereafter duly qualifies, by virtue of his appointment until his successor is duly elected and qualified.

The defendant having failed to show any title to the office a writ of ouster is awarded.

GANTT, C. J., and BURGESS, BRACE and VALLIANT, JJ., concur; ROBINSON, J., dissents; SHERWOOD, J., absent.