THE STATE ex informatione CROW, Attorney-General,
Appellant, v. LUND.

In Banc, February 19, 1902.

1. **Officers:** TENURE: UNTIL SUCCESSORS QUALIFY. The charter pro-
vided that "the city clerk, assessor, counsellor, comptroller and city
physician shall hold their respective offices for the term of two years,
unless sooner removed; ......provided, the appointments first made
under the charter after the general city election of 1890, shall be for
one year only, so that the appointments made thereafter shall be made
at the beginning of the second year of the mayor's term." *Held*, in a
direct proceeding against them by quo warranto, that these officers
did not hold for two years after their appointment and until their
successors were appointed and qualified, but only for two years, and
then the offices became vacant, whether their successors were ap-
pointed or not.

2. ———: ———: ———: CONSTITUTION. Nor is this meaning over-
come by a provision in the Constitution reciting that "in the absence
of any contrary provision, all officers, now or hereafter elected or
appointed, subject to the right of resignation, shall hold office during
their official terms, and until their successors shall be duly elected or
appointed and qualified," for while that provision applies to municipal
officers, as well as to others, yet the words, "in the absence of any
contrary provision," do not refer to contrary provisions in the Con-
stitution, but to provisions in the charter referring specifically to
these officers, and this language of the charter is a specific provision
that the appointment of these officers shall be for two years "only."
Applying the maxim, *"Expressio unius est exclusio alterius"* to this
and other language of the charter, it is apparent that the term of
these appointive officers can not be extended beyond the term fixed
by this clause in the charter.

*Held*, by ROBINSON, J., in a dissenting opinion, that these words in
the charter do not overcome the constitutional requirement and the
common-law rule that "in the absence of a contrary provision, all
officers hold their offices until their successors are elected or ap-

pointed and qualified." *Held*, also that if this language of the charter fixes the term of their offices at two years "and no longer," as the majority opinion holds, then the difference in meaning in this language and that relied on in State ex inf. v. Smith, 152 Mo. 512, where the statute provides for the election of a justice of the peace at the general election in 1894 and every four years thereafter, should be pointed out. *Held*, also, that the words "in the absence of a contrary provision," requires a negative declaration expressed in words, an actual contrary expression in language, which can be pointed out on the page and read with the eye, and is not to be inferred from other language referring to a different subject.

3. ———: ———: ———: CUSTOM. The fact that it may have been the custom for the incumbent of these offices to hold over until their successors be appointed and qualified, is no defense to a quo warranto proceeding, etc., in which the burden is on the defendants to show title to the offices, for the holding of office by custom is no evidence of legal title.

4. ———: ———: ———: INCONVENIENCE. In an ouster proceeding by quo warranto against an incumbent of an office, the fact that inconvenience may result if it be the law that he does not hold until his successor is qualified, is no defense. Especially is such defense out of place where the office is appointive and the charter provides that the mayor shall not hold up a nomination for more than five days.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

REVERSED AND JUDGMENT HERE.

*Edward C. Crow*, Attorney-General, for appellant; *F. M. Black* and *Fyke, Yates, Fyke* and *Snyder* of counsel.

(1) The primary question in a quo warranto proceeding is whether the respondent is entitled to hold the office. This right can only be determined by the court by the respondent pleading the facts in the case. Therefore, facts, and not evidence or conclusions of law, must be distinctly stated. 79 Mo. 272. It is no answer to an information in a quo warranto pro-

ceeding to state that no one else or some one else is not entitled
to the office.    The respondent must show that he is rightfully
in office.    15 Ill. 213.    And, therefore, it has been held in a
quo warranto proceeding, the mere allegation in the plea that
the respondent was elected amounts to nothing, and a denial
of that allegation makes no issue.    56 Mo. 122; 88 Mo. 384;
136 Mo. 376; 129 Mo. 431; 30 Fla. 588; 1 Denio 388; 12
Fla. 265.    (2) Do the charter officers of Kansas City hold
over until their successors are appointed and qualified? Leav-
ing the constitutional declarations recited in respondent's an-
swer out of consideration for the moment, it may be confi-
dently asserted on the weight of the best authority, that, in the
absence of any affirmative provision giving them such right,
their official terms being fixed by the charter (sec. 14, p. 52)
for the definite term of two years, they cease to be officers of
the city at the expiration of such time.    This is the rule laid
down by the United States Supreme Court in Badger v.
United States, 93 U. S. 599.    In the course of its opinion the
court says:    "By the common law, as well as by the statutes
of the United States, when the term of office to which one is
elected or appointed expires, his power to perform its duties
ceases."    This doctrine is specifically affirmed by our Supreme
Court in State ex rel. v. Perkins, 139 Mo. 106, and is strictly
in line with all Missouri cases on the subject.    That this is the
rule recognized by the best courts, and the great weight of
authority, will appear from the following decisions, and cases
therein cited:    People v. Tillman, 8 Abb. Prac. 359; 30
Barb. 195; State v. McLure, 84 N. C. 153; State ex rel. v.
Sheldon, 67 N. W. 613; Richmond Mayoralty Cases, 19
Gratt. 673; Christian v. Gibbs, 53 Miss. 314.    (3) That
there is in the charter of Kansas City, properly construed, "a
contrary provision" within the meaning of this constitutional
provision, whereby the intent of the charter framers to pro-
vide against appointive officers holding over is made manifest,
is very clear.    In this State a reference to statutes and cases

involving tenure of office is convincing of the fact that where a definite term is fixed, it has uniformly been considered necessary to use the words, "and until his successor is elected or appointed and qualified," in order to give an officer authority for holding over.   A typical case of its kind is that of State ex rel. v. Smith, 87 Mo. 158.   The first point to be noticed is that section 14, page 52, creating the five charter offices, provides that the incumbents "shall hold their office for the term of two years."   This alone is tantamount to a contrary provision within the meaning of the State Constitution.   (4) The tenure is fixed for a definite term, two years.   Applying to the construction of this provision the time honored maxim *"expressio unius est exclusio alterius,"* it becomes apparent that this term can not be extended beyond the two years without disregarding the effect of this maxim upon the provisions of the charter.   The expression of a definite term of office, two years, is the exclusion of a longer term which would result from reading into the charter the language of the Constitution, "and until their successors are appointed and qualified."   The limit of the term under this ancient rule of statutory construction is as firmly fixed at two years as though the charter read "only two years," or "two years and no longer."   (5) That it was never intended that charter officers should hold over after the expiration of two years, is made as clear as daylight when we notice that section 14, creating the appointive officers of the city, omits the language "until their successors are appointed and qualified," while section 15, immediately following, and creating the elective officer of the city, does contain this significant language.   It may properly be said by reason of the fact that these sections are together in the charter that the charter framers had the language of both of them in their minds at the same time, and that the omission of words of holding over import in the one case and the use of them in the other was by deliberate design.   That this is a matter to be taken into consideration, and to be given great weight in the consideration of

this case, is a matter too plain to call for much argument or great elaboration.

*Sanford B. Ladd* for respondent.

(1) By American common law, public officers will hold over after the expiration of their terms until their successors are qualified, unless there be a constitutional or statutory prohibition. Dillon's Mun. Corp. (4 Ed.), secs. 219, 220; Tiedeman's Mun. Corp., sec. 81; Mechem on Public Offices and Officers, sec. 397; Throop on Public Officers, secs. 323, 325; Wier v. Bush, 4 Littell (Ky.) 434; McCall v. Mfg. Co., 6 Conn. 437; Tuley v. State, 1 Ind. 502; State ex rel. v. Harrison, 113 Ind. 440; Bath v. Reed, 78 Me. 280. (2) The charter provisions ought not to receive a construction which would lead to absurd or inconvenient results. The contention of the respondents receives additional force from the fact that if they had no right to perform the functions of their offices after the expiration of their terms, no method is provided by the charter for the temporary appointment of persons to discharge their duties. The offices to which they were appointed can only be filled by a nomination by the mayor and confirmation by the upper house of the common council; or, in a certain contingency, by an appointment by the upper house of the common council. In re Griffin, 11 Fed. Cas. 24; State ex rel. v. Slover, 126 Mo. 660; Knowlton v. Moore, 178 U. S. 77; Kane v. Railroad, 112 Mo. 39; State ex rel. v. Seay, 64 Mo. 105. (3) The practical construction of the meaning of the charter provisions by those whose duty it was to execute its provisions, and by the public, is entitled to great weight. Cameron v. Bank, 37 Mich. 243; Harrington v. Smith, 28 Wis. 68; Scanlan v. Childs, 33 Wis. 663; Packard v. Richardson, 17 Mass. 144; Venable v. Railroad, 112 Mo. 125; United States v. Moore, 95 U. S. 763. (4) The construction of the charter contended for by plaintiff is against the policy of the

State. In case the language of a statute has a doubtful, uncertain or ambiguous meaning, a court will not interpret it in such a manner that it will countervail the policy of the State. Rowley v. Stray, 32 Mich. 76; Blackwood v. Van Vliet, 30 Mich. 119; Atty.-Gen. v. Smith, 31 Mich. 363; Thomas v. Owens, 4 Md. 221. (5) The respondents hold over under the provisions of the Constitution of this State. Regardless of what the rule may be at common law, the question is settled by section 5 of article 14 of the Constitution of this State. (6) The language of the constitutional provision is to be interpreted in accordance with its ordinary popular meaning. Cooley, Const. Lim. (6 Ed.), pp. 73, 81; People v. Purdy, 2 Hill, 36; Cronise v. Cronise, 54 Pa. St. 260; Alexander v. People, 7 Col. 167; Picking v. State, 26 Md. 504; People v. May, 3 Mich. 606; State v. Johnson, 132 Mo. 109. (7) The language "in the absence of any contrary provision," is, in substance, a proviso, and as such should be strictly construed. Sutherland, Stat. Con., sec. 223; United States v. Dickson, 15 Pet. 164.

BURGESS, C. J.—This proceeding was begun ex-officio by the Attorney-General in the circuit court of Jackson county, Missouri, to oust respondent, Hans Lund from the office of city comptroller of Kansas City, Missouri. There was judgment for respondent from which plaintiff appeals.

Respondent was on the seventeenth day of April, 1899, by and with the advice and consent of the Common Council of Kansas City, Missouri, appointed by its then mayor, James M. Jones, city comptroller for said city. The appointment was made under section 14, article 4, of the charter of the city which is as follows:

"There shall be a city clerk, city assessor, city counselor, city comptroller and city physician, who shall be appointed by the mayor, by and with the advice and consent of the upper house of the common council, and shall hold their office for the

term of two years, unless sooner removed, and who shall perform such duties as may be prescribed by this charter or any ordinance of the city: Provided, however, that the appointments first made under this charter after the general city election of 1890 shall be for one year only, so that the appointments made thereafter shall be made at the beginning of the second year of the mayor's term."

No one has ever been appointed and confirmed as the successor of respondent, and his contention is that having been appointed for a term of two years, he holds over until his successor is appointed and confirmed.

It was held in People v. Tieman, 30 Barb. 193, 8 Abb. Prac. 359, and later by the Supreme Court of the United States in the case of Badger v. United States ex rel. Bolles, 93 U. S. 599, that by the common law, and, in most of the States, when the term of office to which one is elected or appointed expires, his power to perform his duties ceases; that this is the general rule.

In this State, however, if the common-law rule be as stated in Badger v. Bolles, supra, it does not apply with the exceptions as to judicial officers and members of the legislature, and, in the absence of words indicating that the officer is to hold over until his successor is elected or appointed and qualified, "it is sometimes a matter. of doubt whether or not the incumbent can hold over. . . . . Sometimes, however, where. words of holding-over import are omitted, it may remain doubtful whether such a right was intended to be conferred. In which case the prevalent rule of construction in this country appears to be that if no restrictive words be used, no terms expressly or impliedly prohibiting holding over, then such continuance in official power and life is permissible and valid, until a successor be chosen," etc. [State ex rel. v. Perkins, 139 Mo. 106.]

The same rule is announced in Dillon on Municipal Corporations (4 Ed.), secs. 219, 220; Tiedeman on Munic. Corp.,

sec. 81; Mechem on Public Offices and Officers, sec. 397; and in Throop on Public Officers, secs. 323, 325.

In almost all of the States it is expressly declared in constitutional or by statutory provision, that all officers shall hold over until their successors are elected, or appointed, and qualified, and, even when there is no such provision, as a rule they do so; but where there is a constitutional or statutory restriction expressed or implied to the contrary that rule does not obtain, and the term of office fixed by law expires at the end of the term, and, although the officer may hold over after the expiration of his term, he is thereafter *de facto* an officer (State ex rel. Stevenson v. Smith, 87 Mo. 158; Robb v. Carter, 65 Md. 321) and his acts can not be called in question in a collateral proceeding. Of the adjudications relied upon by defendant the following were proceedings in which the right of some officer to hold over was collaterally called in question: Wier v. Bush, 4 Littell (Ky.) 430; McCall v. Byram Mfg. Co., 6 Conn. 428; Tuley v. State, 1 Ind. 500; Bath v. Reed, 78 Me. 276; Stratton v. Oulton, 28 Cal. 44; Wheeling v. Black, 25 W. Va. 266. State ex rel. v. Harrison, 113 Ind. 434, is also relied upon by defendant, but in that case the organic law of that State upon which the decision is bottomed expressly provides, that, "whenever it is provided in this Constitution, or in any law which may be hereafter passed, that any officer, other than a member of the General Assembly, shall hold his office for any given term, the same shall be so construed to mean that such officer shall hold his office for such term and until his successor shall have been elected and qualified," so that, it is perfectly apparent from that provision of the Constitution that there was no escape from the conclusion reached by the court, that is, that all officers in that State hold over after the expiration of their terms until their successors are elected, or appointed, as the case may be, and are qualified.

The People v. Blair, 82 Ill. App. 570, 181 Ill. 460, is another case relied upon by defendant. That was a direct

proceeding by quo warranto against the defendant Blair to test his right to hold and execute the office of city marshal of the city of Marengo, which it was averred he had usurped without right, and it was held that municipal officers appointed or elected for a fixed term hold over till the election or appointment and qualification of their successors, unless a contrary legislative intent is manifest, and as no such contrary legislative intent appears in the general act for the incorporation of cities, the incumbent Dunwoody held over until his successor was elected, or appointed and qualified.

Now, it is expressly provided by the section of the charter quoted that the city clerk, assessor, counselor, comptroller and city physician, "shall hold their respective offices for the term of two years, unless sooner removed; ... provided, that the appointments first made under this charter after the general city election of 1890, shall be for one year only, so that the appointments made thereafter shall be made at the beginning of the second year of the mayor's term." Thus, by restrictive words fixing the tenure of the office at two years, and at a definite and fixed time. But even if not so expressed it is clearly implied from the language used, that the officers named shall hold their offices for two years only from the date of their appointments, and, "that which is implied in a statute is as much a part of it as what is expressed." [Sutherland on Statutory Construction, sec. 334.]

By section 14 of the charter of Kansas City all officers of the city including the mayor are required to be elected at an election to be held for that purpose on the first Tuesday after the first Monday in April, every two years; while the appointment of all officers first made under the charter after the general city election of 1890 was for one year only, and the appointments made thereafter were required to be made at the beginning of the second year of the mayor's term. [Sec. 14, supra.] The object of having the elective officers elected at one time, and the appointment of the appointive officers at another

time, evidently was that the city administration might not be embarrassed in the conduct and management of its affairs, by too many inexperienced officers. Besides, if the terms of the appointive officers do not expire at the expiration of two years from the time of their appointments, why is it that the charter does not provide that they shall hold over until *their* successors are appointed and qualified, as it does with respect to elective officers? It is too plain for argument that the object indicated was the intention of the framers of the charter, otherwise they would have made the same provision with respect to both classes of officers. It therefore seems obvious that the framers of the charter purposely omitted any provision that the appointive officers should continue to hold over until their successors should be appointed and qualified; and that they intended that those offices should be immediately filled by the mayor upon the expiration of their terms.

In the case of the State ex rel. Weber v. Beardsley, 13 Utah 502, the law provided that elective officers of a city should hold their respective offices for two years, and until their successors were elected and qualified. It also provided that the appointive officers of the city should hold their respective offices for two years, unless sooner removed by the city council. The court said: "The first section declares that elective officers shall hold for two years and until their successors are elected and qualified, while the latter section declares that appointive officers shall hold for two years unless sooner removed. The defendant is an appointive officer, and his legal title to the office terminated on the twelfth day of February, last, unless appointive officers, as well as elective, also hold until their successors are elected and qualified. Does the language of the two sections with respect to the term express the same idea? They are found in the same act. The first declares in express terms that elective officers shall hold for two years and until their successors are elected and qualified; the latter for two years, unless sooner removed. The language

differs.   The language of the first section in express terms ex-
tends the incumbent's term until his successor is elected and
qualified, while the language of the other in express terms
extends the incumbent's term two years from its commence-
ment.   The legislators may have believed that the inconven-
ience, expense, and delay of filling an elective office would be
greater than that of filling an appointive office.   The first sec-
tion continues in office an incumbent selected by the people,
while the latter supersedes one appointive officer with another.
We have been referred to a number of cases under constitutions
or statutes providing that public officers should hold over until
their successors should be elected and qualified.   Others were
mandamus cases, or cases involving collaterally acts of officers
holding over—*de facto* officers.   This is a direct proceeding
to try the title to an office, not the validity of the act of the
officer.   In a direct proceeding, the incumbent must show a
legal title to the office as against the State.   A colorable title
will not do.   In a collateral attack, it would be sufficient to
prove that Beardsley was in office exercising its functions when
the act was done; but in a direct procedure like this one, he
must show a perfect title.   If he fails in any particular judg-
ment must be given against him.   [High, Extr. Rem. (2 Ed.),
sec. 712; People v. Bartlett, 6 Wend. 422.]"

The charter of Kansas City having limited the time of
appointive officers to two years from the date of their appoint-
ments, and defendant having been appointed on the seven-
teenth day of April, 1899, his term of office expired at the end
of two years thereafter, and since the expiration of his term of
office he has been simply an officer *de facto,* unless by reason of
section five, article fourteen of the Constitution of this State
he is continued in office until his successors shall be appointed
and qualified.   That section reads as follows:   "In the ab-
sence of any contrary provision, all officers now or hereafter
elected or appointed, subject to the right of resignation, shall
hold office during their official terms, and until their successors

shall be duly elected or appointed and qualified." Plaintiff contends that this provision of the Constitution does not apply to municipalities, but we are unable to concur in this view, for the following reasons: First, it is broad and comprehensive enough in its terms to include *all officers* whether they be state, county, township or municipal, and, there is nothing in it which is indicative of anything to the contrary, or which leaves any doubt as to its true meaning. Second, if there existed a doubt as to whether or not it embraces municipalities, that doubt can but be dispelled, when that section is taken into consideration with the various provisions of the Constitution which in some way have reference to municipalities.

For instance:

Section 18 of the Bill of Rights, provides: "That no person elected or appointed to any office or employment of trust or profit under the laws of this State, or any ordinance of any municipality in this State, shall hold such office without personally devoting his time to the performance of the duties to the same belonging."

Section 19 provides: "That no person who is now or may hereafter become a collector or receiver of public money, or assistant or deputy of such collector or receiver, shall be eligible to any office of trust or profit in the State of Missouri under the laws thereof, or of any municipality therein, until he shall have accounted for and paid over all the public money for which he may be accountable."

Section 12 of article 4 provides that, "No senator or representative shall, during the term for which he shall have been elected, be appointed to any office under this State, or any municipality thereof; and no member of Congress or person holding any lucrative office under the United States, or this State, or any municipality thereof (militia officers, justices of the peace and notaries public excepted) shall be eligible to either house of the General Assembly, or remain a member

thereof, after having accepted any such office or seat in either house of Congress."

Section 48 of article 4 is: "The General Assembly shall have no power to grant, or to authorize any county or municipal authority to grant any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered or a contract has been entered into and performed in whole or in part, nor pay nor authorize the payment of any claim hereafter created against the State, or any county or municipality of the State, under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void."

Section 13 of article 9 provides: "The fees of no executive or ministerial officer of any county or municipality, exclusive of the salaries actually paid to his necessary deputies, shall exceed the sum of ten thousand dollars for any one year. Every such officer shall make return, quarterly, to the county court, of all fees by him received, and of the salaries by him actually paid to his deputies or assistants, stating the same in detail, and verifying the same by his affidavit; and for any statement or omission in such return, contrary to truth, such officer shall be liable to the penalties of willful and corrupt perjury."

Section 18 of article 9 provides: "In cities or counties having more than two hundred thousand inhabitants, no person shall, at the same time, be a State officer and an officer of any county, city or other municipality; and no person shall, at the same time, fill two municipal offices, either in the same or different municipalities; but this section shall not apply to notaries public, justices of the peace or officers of the militia."

Section 17 of article 10 provides: "The making of profit out of state, county, city, town or school district money, or using the same for any purpose not authorized by law by any

public officer, shall be deemed a felony, and shall be punished as provided by law."

Section 24 of article 12 provides: "No railroad or other transportation company shall grant free passes or tickets, or passes or tickets at a discount, to members of the General Assembly, or members of the Board of Equalization, or any State, or county, or municipal officers; and the acceptance of such pass or ticket, by a member of the General Assembly, or any such officer, shall be a forfeiture of his office."

Section 7 of article 14 provides: "The General Assembly shall, in addition to other penalties, provide for the removal from office of county, city, town and township officers, on conviction of willful, corrupt or fraudulent violation or neglect of official duty."

Section 8 of article 14 provides: "The compensation or fees of no State, county or municipal officer shall be increased during his term of office; nor shall the term of any office be extended for a longer period than that for which such officer was elected or appointed."

These frequent references to municipalities are very persuasive at least, that they were intended by the framers of the Constitution to be embraced within section five, article fourteen, supra, and we are of the opinion that they are. Therefore, unless the words "in the absence of any contrary provision" in that section, refer to and mean a contrary provision *in the Constitution,* and not in the charter by which the office of city comptroller is created, its tenure fixed and its duties prescribed, it must follow from what has been said that the term of office of the defendant expired at the termination of two years from the date of his appointment. To hold that these words mean, in the absence of any contrary provision in the Constitution, would be to say that legislative bodies can not pass any law by which the term of any particular office is

Vol 167 mo—16

to expire at a definite time, however important that may be or however urgent the circumstances may demand.

This would be giving it a forced and unnatural construction, and one not warranted by the language used. This position finds support in the fact that the charter provides that "the appointments first made after the general city election of 1890 shall be for one year *only,* so that the appointments made thereafter shall be made at the beginning of the second year of the mayor's term." No one will contend that that provision of the charter is in conflict with the Constitution, and if it is valid and the term of office of those officers who were appointed under that provision expired at the expiration of one year from the time of their appointments, it must logically follow that those who were thereafter appointed for two years, in the absence of a provision in the charter that they are to hold until their successors are appointed and qualified, held for two years only from the time of their appointments, for if the word "only" is a word of exclusion, as was held in the Perkins case, it is clear that the words "for the term of two years," are restrictive in character and meaning, for the word "only" simply serves to emphasize those words, and does not add to their meaning.

If the law had provided that the term of all appointive offices should be "for one year only," there can be no question but that their term would have expired at the end of the year whether their successors had been appointed or not (State ex rel. v. Perkins, supra, and authorities cited), and those words are not more restrictive than the words, "and shall hold their office for the term of two years, unless sooner removed," which simply means for two years only—nothing more, nothing less.

Moreover, applying to the construction of this provision of the charter the maxim, *"Expressio unius est exclusio alterius,"* it is apparent that the term of the appointive offices can not be extended beyond the term fixed by the charter. The limit of the tenure of these offices is as clearly fixed by the

charter at two years as though it read "only for two years," or "two years and no longer." But if this position be correct, there is no escape from the conclusion that it is so implied by the charter, which is just the same as if expressed.

The fact that it may have been the custom in regard to these appointive offices for the incumbent to hold over until his successor be appointed and qualified, is no defense to this proceeding by the State in the nature of a quo warranto through her representative, the Attorney-General, ex informatione, in which the burden is upon defendant to show title to the office (State ex rel. Harris v. McCann, 88 Mo. 386; State ex rel. v. Meek, 129 Mo. 431; State ex rel. v. Powles, 136 Mo. 376; Ex. Legal Rem. (2 Ed.), sec. 629); and the fact that he may hold it by custom, does not confer upon him any legal title to it. Nor is the fact that, if the term of the comptroller's office expire at the end of two years from the time of appointment, it may lead to inconvenient results, any defense thereto, for the same reason. As said in the case of State ex rel. Atty.-Gen. v. Seay, 64 Mo. l. c. 105, "where, as in this case, there is a *casus omissus* resulting from giving the language of the law the only construction of which it is fairly susceptible, the courts must leave it to the lawmaking power to make provisions to avoid such a consequence." But no such result need follow if defendant be ousted and the office declared vacant in this case for no such vacancy need, under any circumstances, continue for more than five days, as under the charter the mayor can not hold up a nomination for more than five days, and, if he does his duty in making the appointment, and the upper house do theirs in confirming it, as it must be presumed they will do, there can be no ground for apprehending disastrous results or serious consequences.

Our conclusion is that the term of defendant Lund as an officer in fact by the law expired at the expiration of the term of two years from the time of his appointment. We therefore

reverse the judgment of the court below and enter up judgment of ouster against the defendant.

All concur, except *Robinson, J.,* who dissents and expresses his views in a separate opinion.

ROBINSON, J. (*dissenting*).—As stated in the majority opinion of the court, this is a proceeding by quo warranto instituted by the Attorney-General ex-officio, in the circuit court of Jackson county, Missouri, to oust respondent Hans Lund from the office of city comptroller of Kansas City.

Upon a trial of the issues made therein, the circuit court found in favor of respondent, and against relator, and by relator the case was brought here on appeal; and in an opinion written by Burgess, C. J., in which all the members of this court concur, except myself, the judgment of the circuit court has been reversed and the cause remanded with directions to that court to enter up a judgment of ouster against respondent, thus leaving the office of city comptroller of Kansas City vacant and without any incumbent, or any one claiming or asserting the right to exercise the functions and duties of the office. The sole question for solution then is as to the right of an appointive charter officer of Kansas City to hold over until his successor had been duly appointed, confirmed and qualified, there being no express provision in the charter providing that they shall so hold over or continue in office until their successors are appointed and qualified. Section 14 of article 4 of the charter of Kansas City, prescribing the terms of its appointive officers, and the manner of their appointment, reads:

"There shall be a city clerk, city assessor, city counselor, city comptroller and city physician, who shall be appointed by the mayor, by and with the advice and consent of the upper house of the common council, and shall hold their office for the term of two years, unless sooner removed, and who shall perform such duties as may be prescribed by this charter or any

ordinance of the city; provided, however, that the appointments first made under this charter after the general city election of 1890 shall be for one year only, so that the appointments made thereafter shall be made at the beginning of the second year of the mayor's term."

If we ignore for the present the consideration of the effect of the direct statutory and constitutional provision in this State, in determining the question of the official tenure of all officers in the State, whether appointive or elective, and look alone to general rules for guidance, we must conclude from the overwhelming weight of authority, that in this country, at least, all municipal officers, whether appointive or elective, will hold over after the expiration of their fixed terms, and until their successors are elected or appointed and qualified, unless restrained by express provision to the contrary. That unless restrained by the authority under which he is elected or appointed, the right of the officer to exercise the function of his office will continue until his successor has been inducted, although the period for which he was elected or appointed may have expired, and this upon the plainest principle of reason and under the imperative demand of necessity, that the public, for whose benefit such office has been created, may at all times have an incumbent to discharge the duties incident thereto, and that the public interest may not suffer from the neglect of these duties, which must result from the want of an incumbent.

Thus the rule is announced in Tiedeman on Municipal Corporations, sec. 81:

"It is an almost universal rule in the United States that municipal officers, particularly those of a high grade, as the mayor and the officers or commissioners, who are placed at the head of the various municipal departments, shall be elected or appointed for a fixed and definite term. But, in the absence of any express constitutional or statutory prohibition, it is nevertheless the law, that all public officers, whose terms are fixed as to duration by law, are entitled to continue in office

until a successor is legally chosen and qualified. To prevent unavoidable lapses, and to give certainty and permanence to this reasonable rule of the American common law, it has in most of the States been incorporated into a statute."

To the same effect Mechem on Public Offices and Officers, at section, 397, states the rule:

"It is usually provided by law that officers elected or appointed for a fixed term shall hold not only for that term but until their successors are elected and qualified. Where this provision is found, the office does not become vacant upon the expiration of the term if there is then no successor elected and qualified to assume it, but the present incumbent will hold until his successor is elected and qualified, even though it be beyond the term fixed by law. Where, however, no such provision is made, the question of the right of the incumbent to hold over is not so clear, but the prevailing opinion in this country seems to be that unless such holding over be expressly or impliedly prohibited, the incumbent may continue to hold until someone else is elected and qualified to assume the office. Such a rule seems to be demanded by the most obvious requirements of public policy, for without it there must frequently be cases where, from a failure to elect or a refusal or neglect to qualify, the office would be vacant and the public service entirely suspended."

In commenting upon the same subject, Dillon, in his work on Municipal Corporations, vol. 1 (4 Ed.), sec. 219, says:

"In this country, however, a public office is not considered as being in the nature of a grant or contract, and the officer, as against the public, has no freehold or property in the office; and it is almost an invariable provision of law that all officers shall be elected or appointed for a fixed and definite period. To guard against lapses, sometimes unavoidable, the provision is almost always made in terms that the officer shall hold until his successor is elected and qualified. But even without such a provision, the American courts have not adopted the strict

rule of the English corporations which disables the mayor or chief officer from holding beyond the charter or election day, but rather the analogy of the other corporate officers, who hold over until their successors are elected, unless the legislative intent to the contrary be manifested.   Thus in Vermont it is held—there being no statute to the contrary, and such having been the practice—that school officers elected at the annual meeting hold over until others are elected at another annual meeting, whether more or less than a year from the time of their election."

Without further references to, or the citation of other authorities, and without stopping to consider what is or may have been the common-law rule of England on the subject, or the reason that led to its adoption there, we think the American common-law rule may be said to be, that in the absence of a charter provision to the contrary, the officers of a municipal corporation, appointed or elective, shall hold over after the expiration of their fixed terms until their successors are elected and qualified.

So much for the authority upon which respondent may have placed full reliance, in holding to and discharging the duties of his office, after the dates of the expiration of his official term in the absence of an express declared policy in his own State on that subject, as manifest in section 8847, Revised Statutes 1899, which reads: "All other officers elected or appointed by the authority of the laws of this State shall hold their offices until their successors are elected or appointed, commissioned and qualified," as well as by the constitutional mandate of section 5 of article 14 of the Constitution (defining the official tenure of all officers in the State), which provides:   "In the absence of any contrary provision all officers now or hereafter elected or appointed, subject to the right of resignation, shall hold office during their official terms, and until their successors shall be duly elected or appointed and qualified."

In the briefs filed by relator, the correctness of what has been designated the American common-law rule, of the right of all public officers to hold over after the expiration of their terms, and until their successors are elected or appointed and qualified, unless restrained by Constitution or statutory prohibition, is challenged and denied, as is also the application of the provision of section 5, article 14 of our State Constitution, to the municipal officers of the State. But as the error of relator's contention on these two propositions has been declared in the majority opinion of the court, we will make no further comments upon them, but address our remarks to what we consider the errors of the majority opinion, made after its recognition of the general rule above announced, and after holding that the provisions of section 5 of article 14 of the Constitution applied as well to municipal officers as to state and county officers.

If section 5 of article 14 of the Constitution is applicable to municipal officers, and so the majority opinion asserts, what effect must it have upon the official tenure of the respondent herein who holds his office under section 14 of article 4 of the city charter of Kansas City, which fixes the term at two years from the time of his appointment and qualification unless sooner removed? Read into that section the provision of section 5 of article 14 of the Constitution, and the officials therein designated, shall hold their office, during their official term of two years, and until their successors shall be appointed and qualified; and this must certainly be done, unless in said section 14 or in some other section of the charter *a contrary provision* be found for terminating their official tenure before their successors are appointed and qualified. And this, in our opinion, does not exist.

But, says the majority opinion in this case, there is found in the charter provision of section 14 of article 4, what is properly considered "a contrary provision" within the meaning of section 5 of article 14 of the Constitution, whereby the

intent of its framers to provide against the appointive officer, named therein, holding over is made most manifest; and this is discovered in what the court designates "the restrictive words," "for the term of two years unless sooner removed," found in said section defining the official tenure of said appointive officers.

It may be that in a sense the words "for the term of two years" can be said to be "restrictive," in this, that the period for the expiration of the term of office provided for in the section, is for two years from the appointment and qualification of the officer, rather than for three years or four years or for any greater period of time; but certainly there is nothing in the words themselves that can be said to exclude the idea of the right of the officers whose term is thus designated, to hold over after the expiration of the prescribed term and until a successor has been appointed and qualified, in order to prevent a vacancy in the office; or that would indicate that the framers of the charter, in the use of these words, "and shall hold their office for the term of two years," meant to subject their city, at some time, to the almost certain embarrassment of being without the five appointive officers named in said section of the charter, resulting from a conflict between its mayor and the upper house of the common council, such as the city has witnessed for the past year.

If the words, "for the term of two years, unless sooner removed" can be said to be restrictive in the sense of indicating that the appointive officers named in section 14 of article 4 of the charter, can not hold over after the expiration of their official term of two years, then we are at a loss to imagine to what officer or officers, the provision of section 5 of article 14 of the Constitution, could possibly apply. Less could not have been written, in the charter, and have defined the official terms of the office named, and to be appointed. Section 5 of article 14 of the Constitution was intended to apply, and can only apply to officers who have a fixed and defined term of office, and of

them it says "they shall hold during their official terms, and until their successors shall be duly elected or appointed and qualified," in the absence of a provision to the contrary appearing in the act creating and providing for such officers. To provide that an officer shall hold his office "for the term of two years, unless sooner removed," is no more indicative of an intention on the part of the framers of the charter of Kansas City, to have respondent's office immediately vacant after the expiration of two years from his appointment; or that he may not hold over to perform the functions and duties of the office until a successor is appointed and qualified to supersede him, than does the legislative provision of 1891, which provides that, the officers therein designated "shall be elected on the general election day A. D. 1894, and every four years thereafter," indicate that the Legislature intended that the offices of justice of the peace and constable for the four districts of St. Louis therein provided for, should at the end of four years after the general election of 1894, become vacant in the event of failure to elect a successor in 1898.

This court in the case of State ex inf. Atty.-Gen. v. Smith, 152 Mo. 512, disposing of the contention there made, that a justice of the peace elected under the provision of the Act of 1891, held for the fixed term of four years only, and not until his successor was elected and qualified, in an opinion by MARSHALL, J., used this language: "There is no merit in defendant's contention that under the Act of 1891, justices of the peace in St. Louis hold for a fixed term of four years, and not until their successors are elected and qualified. True the first section of that act requires an election at the general election in 1894 and every four years thereafter, and does not prescribe that the person so elected shall hold until his successor is elected, but such a provision was not necessary in the statutes to accomplish this result, for section 5 of article 14 of the Constitution of Missouri provides: 'In the absence of any contrary provision, all officers now or hereafter elected or ap-

pointed, subject to the right of resignation, shall hold office during their official terms, and until their successors shall be duly elected or appointed and qualified.' There is no contrary provision in the Act of 1891, hence Haughton's term continued until the regular election in 1898, and also until his successor should be duly elected and qualified, and such a continuance after the election in 1898, was as much a part of his term as that which preceded that election. [State ex rel. v. Ranson, 73 Mo. l. c. 92.] The appointment of defendant by the judges named was expressly predicated upon the theory that a failure to elect a successor to Haughton at the regular election in 1898, *ipso facto,* created a vacancy in that office. This is a misapprehension of the law in this State. Whatever may be the rule in other States, under their constitutions and statutes, it has been the settled law in this State ever since the decision in State ex rel. v. Lusk, 18 Mo. 333, that the failure to elect a successor to an office at the regular time for holding an election for that office, does not create a vacancy in such office."

Thus it will be seen that this court, in the above case not only held that the justice of the peace, holding office under the Act of 1891, which fixed his term at four years, could continue in office until a successor was elected and qualified, and that such continuance in office after the expiration of the four years for which he was originally elected, was as much a part of his term as that for which he was originally elected to fill; but went to the further extent of holding that there was no vacancy in the office (caused by the failure to elect a successor in 1898) such as to authorize the appointment of a successor, to the then holding over incumbent, for the ensuing four years. In this last position of the court, however, I did not concur. While in that case I recognized the right of the incumbent Haughton to hold over after the expiration of his four-year term, and to exercise the duties of the office, that the public might not suffer from the want of an incumbent, as provided in section 5 of article 14 of the Constitution, he should do so until a successor

was elected or appointed and qualified to take his place, I still thought, there was in contemplation of law a vacancy in the office, in the sense, and to the extent, that a successor might be named, by the appointing power authorized to fill vacancies in that office, as was attempted to be done, and, as I thought, effectually accomplished. In this position I stood alone, the majority of the court holding, as said before, not only that the incumbent Haughton was entitled to hold over after the four years for which he was elected by reason of the provision of section 5, article 14 of the Constitution, but that he was entitled to hold over and exercise the duties of the office until the next general election in 1902, and that his office at no time became vacant in the sense that a successor might be appointed or for any other purpose, and further that the respondent Smith, who was appointed to fill the supposed vacancy in the office, in the attempt to exercise the function thereof was an intruder, and the court's writ of ouster went against him.

In the present majority opinion the entire doctrine of the Smith case is now to be abandoned unless it can be asserted that the words found in the charter "shall hold this office for the term of two years unless sooner removed" defining respondent's tenure of office, are more restrictive in character than the words "shall be elected on the general election day A. D. 1894, and every four weeks thereafter," found in the Act of 1891, designating the official terms of the officers therein named. As read by me, the difference in the language employed in the two acts before the court, in the Smith case, and in this case, appears to be one of phraseology only, and not of substance or meaning, and I think that it was due to the court and to the profession (who must read and consider these two cases for the future guidance of its action) that the difference in meaning of the language used in the two acts construed should have been pointed out in the present majority opinion, as such opposite and irreconcilable results followed their consideration. Wherein lies hidden the difference in meaning of the language

of the two provisions construed, other than that, under the charter provision in question, the officers appointed are to hold for a term of two years unless sooner removed, while the officers named in the Act of 1891 are given the longer term of four years? It is not sufficient merely to say that the provision of section 5 of article 14 of the Constitution applies to the officer named in the Act of 1891, but not to those designated in section 14 of article 4 of the charter in question, or merely to announce arbitrarily, that the charter provision "and shall hold their office for the term of two years unless sooner removed," is more restrictive than the language of the Act of 1891, construed in the Smith case "shall be elected on the general election day A. D. 1891, and *every four years thereafter.*"

This court-discovered difference in the meaning of the language of the two acts should have been pointed out and made clear in the majority opinion, in order that the bar and the office-holding citizens of the State may know, not only how the present case and the Smith case were decided, but to what class and character of offices in the State the provision of section 5 of article 14 of the Constitution is to apply, and from what particular class its provisions are to be withheld, and why.

But, further says the court in the majority opinion, the "contrary provision" mentioned in the Constitution, need not be found in the charter in express words, but may be sought out and discovered by implication drawn from the charter provision taken as a whole, and from this premise has been evolved the conclusion, that as other sections of the charter, providing for the office of mayor and the other elective officers of the city, have fixed their term of office for two years and until their successors have been duly elected and qualified, and that as section 14 of the charter relating to the five appointive offices above indicated (of which respondent holds one) is silent upon the subject of holding over after the term of two years, the plain inference is that they are not to hold over after the two years for which they were appointed, and until their successors are

elected and qualified, that such implications constitute a "contrary provision," within the meaning of those words, as they appear in section 5 of article 14 of the Constitution.

By such a process of reasoning the solemn language of the Constitution is robbed of all significance and meaning. Certain it is that the plain and unambiguous language of section 5 of article 14 of the Constitution, "in the absence of a contrary provision," should not, by any process of construction or misconstruction, be reduced to mean, "in the absence of a possible inference to the contrary," which courts may find by comparing the section of the charter in question, to which the constitutional provision can, and is sought to be applied, with other sections of the charter to which it has no application and can not apply. The logic of the majority opinion in this regard, as I understand it, may be thus stated: the provision of section 5 of article 14 of the Constitution applies alike to municipal and to state and county officers; that it would apply to the five appointive officers named in section 14 of the charter provision in question, but for the fact, that by other sections of the charter, it is provided that the elective officers of the city, shall hold, not only during their official term, but until their successors have been elected and qualified, and, therefore, the inference must be, that it was the intention of the framers of the charter, that the five appointive officers (named in section 14 of the charter) were not to hold over after the expiration of their fixed term of office and until their successors are appointed and qualified, because they did not so express themselves in direct words in said section 14. This court has no right to presume that the framers of our Constitution or the people who adopted it, did not understand the full force and import of the language employed therein, as we are not authorized to presume that the framers of the Kansas City charter did not understand the full significance of its charter provision, and also those of our Constitution, and appreciating the application of the Constitution to the

provisions of section 14 of article 4 of the charter, that they did not know that its provisions render unnecessary in said section 14 of the charter, the repetition of the words, "and until their successors are appointed and qualified," used in previous sections of the charter (defining the official tenure of the city's elective officers). The words found in section 15 of article 4 of the charter, "until their successors are elected and qualified," gave it no meaning not found in the words of section 14 of article 4, where those words are omitted, if the provision of section 5 of article 14 of the Constitution is not ignored; and we should not presume that the framers of the Kansas City charter did not know and realize that fact.

In our view, it was the plain duty of the courts, in construing both the charter and the constitutional provisions in question, to give to the words employed therein their ordinary and common significance, and as said in State ex rel. v. Johnson, 132 Mo. 109, "not to search for occult and strained construction." Considered from this point of view, what then, is the meaning to be given the phrase "contrary provision" as found in the constitutional provision in question? The natural and ordinary import of the phrase, the one which is promptly suggested to the mind on being first seen or heard, is a negative declaration expressed in words. Every one upon seeing or hearing the words, "in the absence of a contrary provision" whether learned or unlearned, instantly, without effort, naturally attaches this meaning to them, because it is according to the general ordinary and common use thereof. As applied to legislation the word "provision" has this well-understood meaning, "actual expression in language"; the clothing of legislative ideas in words, which can be pointed out upon the page and read with the eye; not a conjecture, or a supposition, or an inference drawn from other language referring to a different subject or matter.

The language of section 14 of article 4 of the Kansas City

charter, defining the term of respondent's office, itself needed no construction from the hand of this court. It is clear, specific and definite as it is possible for language to have been written ("shall hold their office for the term of two years, unless sooner removed"). To meet the necessity of just such language, anticipated in charters, ordinances and statutes, the provision of section 5 of article 14 of the Constitution was inspired, adopted and intended to apply, and when so applied, we have a constitutional construction as to the effect of such language used in defining the official tenure of all officers in this State, and to that construction the courts and the officer alike should acknowledge obedience ("shall hold their offices for the term of two years, and until their successors are appointed and qualified").

For the foregoing reasons, I think the judgment of the circuit court, denying the ouster and dismissing the writ, should have been affirmed.

REVERSED AND JUDGMENT HERE.