MYRTLE E. LANGSTON, Administratrix of the Estate of WILLIAM LANGSTON, Appellant, v. HOWELL COUNTY.—79 S. W. (2d) 99.

Division One, February 8, 1935.

*J. N. Burroughs* and *J. L. Bess* for appellant.

*H. D. Green* and *Homer Rinehart* for respondent.

FERGUSON, C.—This action against the defendant, Howell County, was brought by William Langston for salary as county highway engineer claimed to be due and owing to him by Howell County. The action was begun in the Circuit Court of Howell County but went on a change of venue to, and was tried in, the Circuit Court of Ozark County. The cause was tried before the court, a jury being waived; the finding and judgment was for the defendant and plaintiff appealed.

On January 4, 1927, the County Court of Howell County appointed William Langston, who was then the duly qualified and acting surveyor of Howell County, as county highway engineer. The appointment was made by an order of record as follows:

"Now on this date the court appoints William Langston to the position of Highway Engineer, for the county of Howell, for a period of one year, at a salary of $1000 per year, to be paid monthly. Charles Colving and J. Henry Briscoe voting for said appointment and C. A. Cooper voting against said appointment."

Thereupon Langston duly executed and filed the bond, required by statute (now Sec. 8007, R. S. 1929), and entered upon the duties of the office of county highway engineer. Langston claims that he thereafter continued in the office of county highway engineer, and to serve Howell County in that capacity, until September 1, 1931, a period of four years and eight months, no successor having been appointed at the expiration of the term of one year named in the order of appointment and the County Highway Engineer Act (Art. 6, Chap. 98, R. S. 1919—now Art. 8, Chap. 42, R. S. 1929) being during all such time in full force and effect in Howell County. He was paid the salary of $1000, fixed by the order of appointment, in full, for the year 1927 but thereafter received no salary. He alleges that his demands for salary due him for the time he held the office after 1927, a period of three years and eight months, was refused

and this action is to establish his claim against the county therefor in the amount of $3,666.66. By its answer the county admits and pleads, "that on the 4th day of January, 1927, the County Court of Howell County . . . employed plaintiff as highway engineer for the County of Howell for a period of one year at a salary of $1000 to be paid monthly" and that said sum "has been fully paid by defendant as per the contract made;" that "shortly before the expiration of the one year term for which plaintiff was employed . . . plaintiff resigned from his position as county highway engineer and his services were terminated as such and so recognized as being terminated by both the defendant, through its county court, and the plaintiff;" and that "plaintiff abandoned any claim to said position after having resigned as aforesaid."

The plaintiff took the position that having been duly and regularly appointed as county highway engineer and having qualified as such his tenure in that office continued until his successor was appointed and had qualified and offered declarations of law to that effect which were refused by the court. Defendant's contention seems to be first that plaintiff's right to hold the office of county highway engineer terminated with the expiration of the one-year term designated in the order of appointment and that thereafter he was not entitled to hold or continue in that office and second that if it be granted that plaintiff was entitled to continue in the office until his successor was appointed and had qualified that nevertheless plaintiff resigned from the office at or about the time of the expiration of the one-year term specified in the order of appointment, thereafter abandoned the office and ceased to perform the duties thereof, that both plaintiff and the county court thenceforth considered and treated his tenure in the office as having been terminated and that thereupon plaintiff's right to claim the salary of the office ceased. Refusing the proffered declarations of law defining plaintiff's theory the court of its own motion gave the following declaration of law: "The Court declares the law to be that the office of County Highway Engineer is a public office and that it is in the discretion of the county court to appoint a Highway Engineer in their respective counties; that the tenure of said office is within the authority of the county court to make." The court then makes the finding: "The Court in this case finds that the plaintiff Langston was appointed by order of the county court for a term of one year by records of said court; that his term ended on the last day of the year for which he was appointed; that there was no order made thereafter by the county court reappointing said Langston for any other term" and on the basis of that finding entered judgment for defendant. ■ We concur with the statement of the foregoing declaration of law that the office of County Highway Engineer is a public office as clearly appears from the statute creating that

.

office "in the several counties" of this State to which we hereafter refer. If the declaration of law means that the discretion and power to select a county highway engineer and fix the length of term for which he is appointed is vested in the county court we also concur therein. The County Highway Engineer Act in force and effect at the time of Langston's appointment, and during the whole period of time involved in this action, is Article 6, Chapter 98, Revised Statutes 1919 (now Art. 8, Chap. 42, R. S. 1929), being Sections 10782 to 10799, Revised Statutes 1919, inclusive. We undertake to summarize the more pertinent general provisions of the act. Section 10782 reads:

"There is hereby created in the several counties of the State of Missouri the office of county highway engineer, and the county courts of each county in this state are hereby authorized and empowered to appoint, and may appoint a highway engineer within and for their respective counties at any regular meeting for such length of time as may be deemed advisable in the judgment of the court, at a compensation to be fixed by the court."

Section 10783 requires the county highway engineer to file a bond, in an amount fixed by the county court, to be approved by the county court, conditioned "for the faithful discharge of his duties . . . and that he will account for and deliver to his successor in office, at the expiration of his term of office, all tools, machinery, books, papers and other property belonging to the county and road districts thereof." Section 10785 prescribes the qualifications of the county highway engineer and provides that if he shall fail, refuse or neglect to perform any of the duties imposed upon him by law "or if he be found incompetent or in any manner unfitted for such office, he may be removed from office by the county court, and it shall be the duty of the county court to remove such county highway engineer forthwith and to appoint a successor in his stead." Section 10784 specifies a maximum and minimum within which the county court may fix the salary. Section 10786 requires that the county provide an office for the county highway engineer at the county seat and that such officer shall thereat "preserve all books plats and papers pertaining to his office." Section 10787 provides that the county court "may, in their discretion, appoint the county surveyor . . . to the office of county highway engineer." Sections 10788 to 10794, inclusive, define and declare the duties and authority of the county highway engineer; that he "shall be custodian of all tools, material and machinery belonging to the road districts and the county, except as may be otherwise provided by law;" that he "shall personally, or by deputy, inspect the condition of the roads, culverts and bridges . . . as often as practicable, and, upon the written complaint of three freeholders in any such district, of the bad or dangerous condition of the roads, culverts or bridges

of such district, or of the neglect of duty by any road overseer . . . at once visit said road and investigate the complaint, and, if found necessary, to at once cause such road to be placed in good condition;'' and he ''shall, at each regular term of the county court, and at such other times as required by the court, file a detailed statement of the condition of the roads, and the amount of money available for each district, with his recommendation as to what action should be taken by the court for the repair or improvement of the roads'' and ''make a yearly report during the month of January for the preceding year . . . to the state highway engineer.'' etc.; that he shall ''call a meeting at the county seat each year of all road overseers of the county, for consultation and conference touching the conditions and needs of the roads and bridges of the county and methods of improving same . . . between the first and fifteenth day of March,'' etc.; that he shall have supervision over the road overseers of the county who are required to follow his ''plans and instructions . . . in all matters concerning the expenditure of the funds and improving the roads'' and he ''may suspend'' any overseer who ''fails to follow'' his ''plans and instructions'' and report the matter to the county court for a hearing thereon; and, that he ''shall, on or before the first day of January in each year, file with the county court a report, in writing, showing the general condition of the roads and bridges of the county, including all improvements, if any, made during the past year, together with his recommendations,'' etc. Section 10795 provides a method whereby the provisions of the County Highway Engineer Act may be suspended in any county; that ''whenever a petition, signed by at least ten per cent of the taxpaying citizens and voters representing at least two-thirds of the townships of any county . . . shall be presented to the county court thereof asking that a proposition be submitted to the qualified voters of the county, to determine whether or not the provisions of this article shall continue to apply to such county, the court, . . . may order that a proposition for the approval or rejection of the provisions of this article be submitted to the qualified voters of the county at any general election held for the purpose of electing county officers, or upon a petition, signed by at least fifteen per cent of the taxpaying citizens and the voters representing at least two-thirds of the townships of any county . . . asking that such proposition be submitted, at a special election, the county court shall call'' such special election. The section then provides for notice of election, prescribes the form of ballot and the manner of marking same, and that, ''if a majority of those voting at such election upon the proposition vote against the county highway engineer law, then this article and the provisions of the law relating to the appointment and duties of a county highway engineer shall not be enforced in such county.'' The next

section, 10796, deals with the situation resulting in counties where the County Highway Engineer Law is suspended in the manner prescribed by Section 10795 and provides that in such counties: ''All matters relating to roads and highways and the expenditure of the public funds thereon shall be governed by the laws then in force in such counties, except that part of the law pertaining to the appointment of the county highway engineer'' and that ''the county surveyor shall be *ex officio* county highway engineer, and, as such, shall perform such services  .   .   .   as provided by this article to be done and performed by the county highway engineer, or as may be ordered by the county court; and for his services as *ex officio* county highway engineer he shall receive such compensation as may be allowed by the county court, of not less than three dollars nor more then five dollars for each day he may be actually employed or engaged as such county highway engineer.'' Section 10797 prescribes a method whereby the County Highway Engineer Law can be resubmitted, after the expiration of one year, in counties in which it has been suspended under the provisions of Section 10795.

It is apparent that the trial court found for the defendant on the theory that upon the expiration of the term of one year fixed by the order of appointment Langston's term and tenure in office automatically expired; that thereupon and thereafter, since the county court did not reappoint him, he ceased to be county highway engineer; that his tenure in office was at an end and that he was not thereafter entitled to hold over or continue in that office. It is also apparent that the trial court did not base its finding and judgment upon any theory of resignation and the intentional abandonment thereafter of the office by Langston with the acquiescence of the county court.

We have made rather extensive reference to the County Highway Engineer Law in the thought that upon consideration of the act as a whole it very clearly appears that the office of county highway engineer is thereby created and provided for in the several counties of the State with numerous duties prescribed and imposed; that it is a continuing office which can be abolished or done away with only by a vote of the people of the county taken in conformity with the provisions of Section 10795, referred to supra; that the office cannot be dispensed with and its duties transferred or committed. by the county court, to the county surveyor, or any other person, nor so long as the act continues in force and effect, that is so long as the office has not been suspended by the statutory method, neither the county surveyor as such nor any other person is authorized to perform the duties of highway engineer. It will be borne in mind that at all times mentioned the act was in full force and effect in Howell County and had not been suspended by a vote of the·people

■ And we find no justification for the construction which defendant would give to Section 10782 that the appointment of a county highway engineer is wholly optional with the county court; that the county court can ignore the provisions of the act and, of its own motion, suspend its operation in any county and thereby do away with the office of county highway engineer in such county merely by not appointing a county highway engineer and that the failure and refusal of the County Court of Howell County to appoint a successor to Langston had that effect. The act clearly contemplates that until it is suspended in any county, in the manner therein provided, the numerous duties imposed shall be performed and the authority therein vested be exercised by a county engineer appointed by the county court. On the other hand the act provides that in the event the office of county highway engineer is abolished in such county, by vote of the people taken in the manner provided by Section 10795, then "the county surveyor shall be *ex officio* county highway engineer, and, as such, shall perform such services pertaining to the working, improvement, repairing and maintenance of the roads and highways, and the building of bridges and culverts as provided by this article to be done and performed by the county highway engineer."

Our Constitution (Sec. 5, Art. 14) provides that: "In the absence of any contrary provision, all officers now or hereafter elected or appointed, subject to the right of resignation, shall hold office during their official terms, and until their successors shall be duly elected or appointed and qualified," and Section 11196, Revised Statutes 1929 (Sec. 9168, R. S. 1919) reads: "All officers elected or appointed by the authority of the laws of this state shall hold their offices until their successors are elected or appointed, commissioned and qualified." We find no constitutional or statutory provision which either expressly or by implication excludes the county highway engineer, or the office of county highway engineer, from the operation and effect of the foregoing constitutional and statutory rule so that since there is no "contrary provision" the rule so prescribed must be applied. It is said in 46 Corpus Juris, page 968: "The general trend of decisions in this country is that, in the absence of an express or implied constitutional or statutory provision to the contrary, an officer is entitled to hold his office until his successor is appointed or chosen and has qualified." Langston's official term was fixed at one year but upon the expiration thereof, no successor having been appointed, his right to hold such office, and his title thereto, continued until the right of a duly appointed and qualified successor attached. His right to hold over and his continuance in the office was of course contingent and defeasible subject to be terminated at any time by the appointment and qualification of his successor. During the time an officer so holds over, under the pro-

visions of the constitutional and statutory provisions, supra, he holds the office as a *de jure* officer (46 C. J., p. 969) and by the same tenure, after the prescribed term, until the right of his duly chosen and qualified successor attaches. It therefore appears that the trial court was in error as to the applicable rule of law and in holding that Langston was not entitled to hold over and continue in office after the expiration of the term prescribed by the order of appointment.

The evidence, as it appears in the abstract filed herein, is somewhat confusing. Defendant, as respondent here, cites authorities and advances the contention that a resignation from office and its acceptance may be by parol. In this connection and in answer to some of appellant's contentions concerning the admissibility of certain statements alleged to have been made by Langston we are inclined to the opinion that any such statements to the effect that he had resigned from the office and tending to show that thereafter he abandoned the office are competent as admissions against interest. Defendant attempted to show a resignation and subsequent abandonment. However, the evidence relating to a resignation was so vague, indefinite and uncertain as to hardly amount to substantial evidence. It may perhaps be more definitely shown and fully developed upon a retrial. It is very clear that the court did not base its finding upon that defense nevertheless if the implications appearing are more fully developed our impression is that defendant can perhaps, on retrial, adduce evidence of a more substantial quality tending to support the defense of resignation and subsequent abandonment of the office. As example we refer to the testimony concerning the alleged resignation. Mrs. Lasater, the county clerk of Howell County, was asked: "Were you present about the time Mr. Langston's term was up as county highway engineer? A. I waited on the court. Q. Was you present when Mr. Langston came in (where not stated, we are to conjecture before the county court at the time in session) after a fuss with the county court and told them he had resigned? A. Yes sir. He stated his surveyor's job alone would not make a good living, he would have to support his family, he would resign." Whether the threat to resign, or the parol resignation if it could be so construed, referred to the office of county highway engineer or the office of surveyor is not clear. The next witness which says anything about a resignation is C. A. Cooper, one of the judges of the county court, called as a witness for defendant. He testified that when the term of one year "was about out" Langston asked to be reappointed county highway engineer; that "we (presumably the county court) decided not to re-employ him;" and that Langston said "he would resign as surveyor if we didn't employ him as highway engineer." The witness was then asked the question: "Did he tender any kind of resignation?" He replied thereto

and this constitutes the whole of his testimony on the matter: "Yes he wrote out a resignation and threw it down on the table." This incident we must suppose, it does not appear, happened at and during a session of the county court. We quote the testimony of another of the county judges called as a witness for the defendant.

"Q. Now Judge I will ask you if you were present when Mr. Langston came in there about the end of the term as highway engineer for the year, in which he had a conversation about reappointment? A. He said county surveyor was a starvation job, he would have to resign if we didn't appoint him to that position (highway engineer) and we decided not to and didn't.

"Q. Did he submit any written resignation? A. Yes sir.

"Q. Have you that written resignation? A. Well I am not sure whether we preserved it with the county papers but he wrote it out and pitched it out to the county court. The county clerk will know whether it is there or not. Really I don't know whether it was there or not."

Thus these two witnesses testified that a written resignation of some kind was tendered. The purported resignation though called for was not produced nor its absence accounted for. The county clerk was not asked about the matter. To what office the resignation referred, whether surveyor or highway engineer is not clear. The statement of Judge Cooper indicates that Langston's reference to resigning was to the office of surveyor unless he was reappointed highway engineer. There is no record of a resignation, at least none was produced, or of its acceptance. We deem it unnecessary to review the evidence relating to the alleged abandonment by Langston of the office of county highway engineer. These matters can be clarified and more fully developed upon a retrial.

For the reason first stated the judgment must be reversed and the cause remanded. It is so ordered. *Sturgis* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.