**STATE ex rel. Letha M. VOSS, Sarah L. Lucito, Malzie Francis Dorcy and Roberta E. Shortino, Respondents,**

v.

**Ilus W. DAVIS, Mayor et al., Appellants.**

No. 52302.

Supreme Court of Missouri, Division No. 1.

Sept. 11, 1967.

Charles C. Shafer, Jr., Kansas City, for respondent-relators.

R. Robert Cohn, John C. Thurlo, Kansas City, for respondents, Fred A. Murdock, Henry L. Mahley, Max W. Foust and Lowell L. Knipmeyer, Members of Bd. of Election Comrs. for Kansas City, Jackson County.

Herbert C. Hoffman, City Counselor, Carrol C. Kennett, Assoc. City Counselor, Kansas City, for appellants.

SEILER, Judge.

The trial court, upon petition in mandamus by certain electors and taxpayers of Kansas City, ordered the city council to enact an ordinance submitting certain charter amendments to an election and if not done, ordered the Kansas City Board of Election Commissioners to proceed with the election as if the ordinance calling it had been passed, but stayed the effective date of the judgment until the appeal was decided. The city council appeals, contending the proposed charter amendments, which would set the terms of the elected officials of the city (including incumbents) at two years instead of the four presently provided, violate Art. VII, Sec. 12 of the 1945 constitution, V.A.M.S., that the proposed amendments conflict with other charter provisions, and that the petitions for said amendments were insufficient and could not be made sufficient by supplemental petitions.

The facts are stipulated. The proposed charter amendments to the Kansas City home rule charter, excluding portions relating to terms which have already expired and hence need not concern us, are these:

"Sec. 489. Terms of office to be two years. The terms of office of all elective

officials, including the mayor, the councilmen and the judges of the municipal court, shall be two years, and until their successors are elected and have qualified.

\* \* \* \* \* \*

"The terms of office of officials elected at each biennial election after such 1965 election shall continue until ten o'clock in the forenoon of April 10th, two years after the date when they were elected and until their successors are elected and have qualified. This Section shall take effect immediately upon adoption.

"Sec. 490. Elections held every two years . . . [I]n the year 1967, and in each second year thereafter, a regular municipal election for the choice of all such municipal officers to be elected by the people shall be held on the last Tuesday in March. A primary election shall be held in the city, in each election precinct thereof on the fourth Tuesday preceding each regular municipal election. All candidates for office shall be nominated and all elections herein provided for shall be held in accordance with the provisions of Article XVI of this Charter, and the other election laws of this state applicable to elections held in this city not in conflict with this Section. This Section shall take effect immediately upon its adoption."

Relators caused petitions for the charter amendments to be circulated and then filed 701 such petitions in the office of the board of election commissioners on April 1, 1965. The election board notified relators April 22, 1965 that the petitions were 2014 signatures short of the required 22,479 (10% of the total registered electors) and gave relators ten days to obtain supplemental petitions, which the relators proceeded to obtain and filed with the board May 1, 1965, in the form of an additional 165 sheets of petitions and signatures. The board on May 6, 1965, certified to the city council that the required number of signatures of registered voters in Kansas City had been obtained. The Council refused to pass an ordinance submitting to a vote of the people the propositions set forth in the proposed amendments.

■ We do not agree with the council's contention that the original petitions could not lawfully be supplemented within ten days as permitted by the election board. Neither Sec. 19 nor 20 of Art. VI of the 1945 constitution, although self-executing, State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W. 2d 762, goes into detail as to the procedure to be followed in determining the sufficiency of a petition to amend a home rule charter. Although the two sections refer to "petition", this word must be taken as having a collective meaning—numerous separate petitions rather than a single document, as the latter would be impossible where there were thousands of signatures involved. Sec. 20 provides the question of amendment shall be submitted on a petition signed by the requisite number of registered qualified electors filed with the body in charge of the city elections. It does not say when the door is closed on accumulating the required number or that all the petitions must be filed at the same time—only that when a petition signed by the requisite number is filed the question shall be submitted.

■■ Sec. 19 provides the election body or official "shall forthwith[1] finally determine the sufficiency of the petition", but does not provide exactly what makes up the petition whose sufficiency is to be determined, aside from the fact it must be filed.

---

1. One of the meanings given by Webster's Third New International Dictionary for "forthwith" is "within a reasonable time" and we have said "[f]orthwith means thereafter, and within a reasonable time thereafter", Atlantic Nat. Bank of Jacksonville, Fla. v. St. Louis Union Trust Co., 357 Mo. 770, 211 S.W.2d 2, 7. "Generally 'forthwith' means within a reasonable time under the circumstances", In re Costello's Estate, 338 Mo. 673, 92 S.W.2d 723, 725, as would necessarily have to be the case here with thousands of names and records to check.

In the matter of charter amendments by petition, as in initiative and referendum, the people are exercising power reserved to them and the provisions under which they proceed should be construed liberally to the end that their right to determine all proper questions by free and open elections shall be secure. "Provisions reserving to the people the powers of initiative and referendum are given a liberal construction to effectuate the policy thereby adopted. Such provisions should be construed so as to make effective the reservation of power by the people", 28 Am.Jur., Initiative, Referendum and Recall, Sec. 6, p. 439. We should not apply the provisions of Secs. 19 and 20 relating to the sufficiency of petitions as though they were "a rule in a checker game, where once your hand is off the man the move is final", but rather should apply them so as "to give all who actually desire the passage of the proposed measure every opportunity to obtain the required number on a petition finally put up to the city council for action", Dagley v. McIndoe, 190 Mo. App. 166, 176 S.W. 243, 247. This is not a case where the number of signatures first obtained was so small as to make preposterous the expectation of obtaining sufficient additional signatures,[2] or where the extension or period of time within which additional petitions were permitted was so long as to make stale the signatures on the petitions first filed. We see nothing unreasonable, against public policy, or violative of any constitutional provision in the board's allowing ten days in which to obtain additional signatures. Where there is a large metropolitan electorate as here, circulators of petitions acting with the utmost diligence and highest good faith can expect to sustain a significant but unpredictable attrition in the number of valid signatures obtained— signers of petitions may honestly be mistaken as to whether they are registered, their registration may have expired, they may have moved to a new address, there may be duplications of signatures, etc. By necessity of the circumstances of the case petitioners have no practical way to determine in advance whether they have obtained the necessary 10% of the qualified registered electorate. It would be unduly restrictive of a constitutional right to refuse those interested a reasonable opportunity to secure additional signatures where they were close to the mark on the first attempt. Otherwise the petitioners could be safe only if they "make assurance double sure" by getting so many signatures there would be no chance of falling short, which would greatly and unjustifiably handicap the right of charter amendment by petition.

So we overrule the council's contention that the petitions were not properly filed and that the board acted illegally in receiving the additional petitions and in certifying the petitions to the council as sufficient.

■■■ As to the assignment the proposed amendments are unconstitutional: Respondents agree with relators' contention that under American law there is no vested or private property right in a public office, State ex rel. Henson v. Sheppard, 192 Mo. 497, 91 S.W. 477; State v. Ludwig, (Mo. Sup. banc) 322 S.W.2d 841, 847; McQuillin on Muncipal Corporations, Vol. 3, Sec. 12.117, p. 489; 16 C.J.S. Constitutional Law § 251, p. 1230, and concede that the terms of office of Kansas City elective officials may be shortened by a charter amendment, but contend this may not be made effective during their terms of office, citing State ex inf. Barrett ex rel. Bradshaw v. Hedrick, 294 Mo. 21, 241 S.W. 402, 411, as follows:

"'A public office is a public trust;' it is a public agency solely for the good of the public, which, *unless otherwise provided in*

---

2. The stipulation discloses it took 1765 man hours of work for election board employees to check the first group of 701 petitions and 255 man hours to check the second group of 165 petitions. Approximately 14,000 signatures appearing on the petitions were rejected for various reasons, so evidently the petitions contained over 35,000 signatures. The initial filings, with signatures of 20,464 qualified registered electors, were less than 1% short of the required number.

*the Constitution*, may be abolished or regulated by statute. Nevertheless, one who has been elected or appointed to a public office has a right to exercise its functions and enjoy its emoluments during the term for which he was appointed or elected, unless sooner removed in accordance with the provisions of the law. Whoever undertakes to remove such a one must be able to put his finger on the law authorizing such action * * *" (emphasis by respondents).

The council contends Sec. 12, Art. VII, of the 1945 constitution[3] forbids what the proposed charter amendments call for and the city is under no duty to submit the same to the voters.[4] The parties have not cited a case directly in point and we have not been able to find one. "There is no doubt of the power of the legislature which creates an office to abolish it or to change it, and the legislature may shorten or lengthen the term of the office itself, in the absence of constitutional inhibition", 43 Am.Jur., Public Officers, Sec. 151, p. 11. The matter is well put in Lanza v. Wagner, 11 N.Y.2d 317, 229 N.Y.S.2d 380, 385, 183 N.E.2d 670, 673, 97 A.L.R.2d 344, to-wit, " * * * [T]here is no constitutional inhibition against the mere shortening of the term of an existing statutory office by legislation aimed at the office rather than at its incumbent. * * * Absent any express constitutional limitation, the Legislature [note: here it would be the people of Kansas City] has full and unquestionable power to abolish an office of its creation or to modify its term, or other incidents attending it, in the public interest, even though the effect may be to curtail an incumbent's unexpired term." The Lanza case referred to an early New York decision, Long v. Mayor, 81 N.Y. 425, 427, where the court said: "It is claimed that the act in question shortens the duration of the plaintiff's term of office, so that the term declared by statute, in force when he was elected, to be for 'two years', is made, by the act of 1870, a term for five months. We see no legal objection thereto. The office was not created by, or regulated in any manner by, the Constitution. The legislature had entire control over the matter. The office was created, its term was fixed by that body, and it could be changed by it * * * The original term was thus shortened. The legislation was aimed at the office, not the incumbent. But however viewed, the act complained of was within the lawful exercise of power by the legislature, and within the principle frequently reiterated by the courts of this State, that a public office is not a grant, and that the right to it does not depend upon, or partake of the nature of, a contract * * *"

The council contends that the only exception to Sec. 12, Art. VII, which section provides "Except as provided in this constitution, and subject to the right of resignation, all officers shall hold office for the term thereof, and until their successsors are duly elected or appointed and qualified", is that set out at the start of the section; that this exception relates back to Sec. 4, Art. VII, which provides "Except as provided in this constitution, all officers not subject to impeachment shall be subject to removal

---

3. Relators do not seriously challenge the city's contention that Sec. 12, Art. VII, applies to municipal officers. The similar provision of the 1875 constitution, Sec. 5, Art. XIV, was held to apply to municipalities, State ex rel. Crow v. Lund, 167 Mo. 228, 66 S.W. 1062, 1065. All the officials here involved are elected, act independently, take an oath of office, are without control of a superior power other than the law, have delegated to them some part of the sovereign power of the people and there is continuity in their offices. We therefore hold that Sec. 12, Art. VII, applies to the municipal officers here involved, Kirby v. Nolte, (banc) 349 Mo. 1015, 164 S.W.2d 1.

4. Usually courts will not inquire into the validity of an act of legislation until it has become fait accompli, but here we will rule the constitutional question because if unconstitutional we should not put Kansas City to the burden and expense of submitting the amendments to a vote, State ex rel. Cranfill v. Smith, 330 Mo. 252, 48 S.W.2d 891, 81 A.L.R. 1066; Anderson v. Smith, (Mo.App.) 377 S.W. 2d 554.

from office in the manner and for the causes provided by law"; that the officers subject to impeachment are those specified in Sec. 1, Art. VII, namely, all elective executive officials of the state, and judges of the supreme court, courts of appeals and circuit courts; that this does not include the mayor, city councilmen and municipal judges, who therefore, are subject to removal only "in the manner and for the causes provided by law"; that these provisions for removal are found in the charter of Kansas City and consist of Sec. 9 of the charter relating to expulsion of a member of the council by the council itself and Secs. 434–444 relating to recall petitions seeking the removal from office of an elected official. The council contends further that the proposed charter amendments constitute merely an attempt to remove from office the incumbents prior to the expiration of the four-year term to which they were elected, which attempt is in violation of Sec. 12, Art. VII.

■■■■ There is no proof in the record that the proposed charter amendments are merely a device to accomplish a recall with no thought of effectuating a change in policy as to the length of terms of the elected officials generally (assuming such evidence would be admissible if offered). The amendments on their face are impersonal, and the fact is that the terms of the incumbents in office when these proposed charter amendments were circulated and presented to the city council have already expired, so the amendments could not possibly operate as a recall as to them; and as to those now in office, these amendments were pending when they became candidates. At any rate, as stated in 16 C.J.S. Constitutional Law § 154, p. 775, "The courts, as a general rule, cannot inquire into the motive, policy, wisdom, or expediency of legislation". And further, at p. 809, "It is a well settled rule that in determining the validity of an enactment, the judiciary will not inquire into the motives or reasons of the legislature or the members thereof." This is equally true with respect to legislation in the form of charter amendments proposed by the electors of Kansas City by the petition method. The adoption of a charter amendment is direct legislation by the people of Kansas City—the people are legislating for themselves, they are the lawmakers, by their vote, State ex rel. Otto v. Kansas City, (banc) 310 Mo. 542, 276 S.W. 389, 400.

The proposed amendments on their face deal with the terms of elected officials and that is all. Terms of elected officials are generally regulated or fixed by various considerations affecting the public interest. It is apparent that a reasonable argument can be advanced for the soundness of two-year terms, as well as for four-year terms. Some people may think two-year terms provide a more responsive government, perhaps influenced by the two-year terms for representatives in the Congress and the General Assembly or the fact that on various occasions in the past the terms of the elected officials of Kansas City have been two years. We do not hereby mean to express any opinion as to the wisdom of the proposed charter amendments. Such is not within our province. We make the above comments merely for the purpose of illustrating that the proposed charter amendments cannot fairly be said to be completely divorced from a field in which the Kansas City electors have a legitimate concern—the length of terms of their elected officials—even though an incidental effect of the proposed amendments, if adopted, would be to shorten the terms of whoever is then in office.

In Sanders v. Kansas City, 175 Mo.App. 367, 162 S.W. 663, it appeared that one Sanders was appointed to the office of city physician on April 15, 1907, for a term expiring April 15, 1909. He discharged the duties of his office until October 15, 1908, when he was ousted and his salary discontinued on the ground that his office had been abolished by the provisions of a new charter adopted by the people of Kansas City at an election held September 3, 1908. The new charter omitted the office of city physician. Plaintiff brought suit for un-

paid salary alleged to be due him from October 15, 1908 to April 15, 1909. Judgment in the trial court was for the defendant city, which was affirmed on appeal, the court saying at 162 S.W. l. c. 665:

" * * * [A]n officer elected or appointed even for a definite term takes office with the implied understanding that the power which created the office may abolish it before the expiration of his term, in which event he will find himself out of office. * * *

"We give our approval to the following quotation from McQuillin on Municipal Corporations, vol. 2, § 494: 'An unconditional repeal of a municipal charter, or the substitution of another with inconsistent provisions, without a saving clause respecting offices and officers as they existed under the former charter, will operate to abolish all offices thereunder. *The term of a charter officer may be shortened by amendment to the charter * * *"* (emphasis ours).

Although the 1875 constitution, which was in force at the time of the above decision, contained provisions similar to the present Secs. 1, 4 and 12 of Art. VII relied upon by the council here, no mention of any constitutional provisions was made in the Sanders decision.

▮▮▮ In our opinion, respondents misconstrue Sec. 12 when they say its purpose is to bar the shortening of the term of an officer. We believe the intent and purpose of Sec. 12 is to guarantee a continuity of tenure, to make sure that the public, for whose benefit the office has been created, will at all times have an incumbent to perform the duties thereof, to insure that the public interest will not suffer from the

neglect of duties which would result for want of an incumbent and that public business will not be interrupted. See State v. Tyler, 349 Mo. 167, 159 S.W.2d 777, 781. Such is the effect given Sec. 12, Art. V, and what is now Sec. 105.010, V.A.M.S., as seen by the holding in Langston v. Howell County, 336 Mo. 444, 79 S.W.2d 99, 102, that "During the time an officer so holds over, under the provisions of the constitutional and statutory provisions, supra, he holds the office as a de jure officer (46 C.J. p. 969) and by the same tenure, after the prescribed term, until the right of his duly chosen and qualified successor attaches." In 67 C.J.S. Officers § 48, p. 203, it is said: "In many states constitutional or statutory provisions that officers shall hold over after the expiration of their terms until their successors are elected or appointed and have qualified have been adopted to prevent public convenience from suffering because of a vacancy, and to insure against vacancies in office except in classes of cases or for causes provided by law * * *."[5]

Sec. 12 does not read "all officers shall hold office for the length of the term as it existed when they were elected", as the council in effect contends. The words "for the term thereof" in Sec. 12 mean for the term of the office, whatever it may be. When so read and taken along with the final clause "and until their successors are duly elected or appointed and qualified", which is an integral part of the section, it then fulfills its purpose of insuring continuity and avoiding a lapse in an office, no matter whether the term is shortened or not. In the case before us the city charter fixes the term, not the constitution. By the charter amendments under consideration it is proposed to fix the term for which the officers concerned shall hold office at

---

5. According to the Index Digest of State Constitutions, 2nd Ed., 1959, Columbia University, p. 847, nineteen state constitutions contain provisions relating to officers holding over after term. In Vernon's Constitution of the State of Texas, Annotated, Vol. 3, p. 182–183, the commentary under Sec. 17, Art. 16, states: "This provision, that officers hold over after the expiration of their terms until their successors are elected or appointed and have qualified, was placed in the constitution to prevent public convenience from suffering because of a vacancy in office, and to insure against vacancies in office * * *."

two years. If these amendments are adopted then the term will be two years, and if the officers hold it for that length of time and until their successors are duly elected or appointed and qualified the requirements of Sec. 12 will have been met.

■ Even if Sec. 12 were directed against the shortening of an incumbent's term of office as contended by the council, it would not follow the proposed charter amendments would be invalid, because the impact of the amendments on the terms of whoever happens to be the incumbents when adopted (if so), would be only incidental to the main purpose of the amendments, which is to effect a change in the terms of the elected officials generally. This is illustrated by what the courts have said regarding the provisions against *extending* the term of any officer, found in both the 1945 and 1875 constitutions (Sec. 13, Art. VII, 1945 constitution, and Sec. 8, Art. XIV, 1875 constitution) and couched in language equally as imperative as that of Sec. 12. In State ex rel. Attorney General v. Ranson, 73 Mo. 78, where the effect of a statute was to extend the term of certain justices of the peace, the courts said, 73 Mo. 1. c. 89:

" * * * The spirit and intent of the convention, in framing section 8, of article 14 of the constitution [the 1875 constitution], as we apprehend, was to prevent the too frequent practice that had obtained, of passing special laws to increase the compensation or fees of particular officers, or to extend the term of special offices by like special legislation, for the benefit of present incumbents * * *. We cannot suppose that the convention intended thereby to cripple and embarrass the legislature in the exercise of a sound and wise discretion in making such reasonable changes in the times of electing public officers, as the public interest and convenience might require. Such changes were not within the mischief contemplated by the convention, although they might incidentally result, in some instances, in prolonging the time a given officer might have under his commission * * * [I]f in the exercise of a sound and proper discretion on the part of the legislature, in thus fixing a definite time for the election of justices of the peace, it should incidently result, that some of the justices should thereby continue in office longer than they would have done in the absence of this enactment, we are not prepared to say that the legislature thereby exceeded its authority, or violated the spirit or intent of the constitution in this particular." Accord, State ex rel. Attorney General v. McGovney, 92 Mo. 428, 3 S.W. 867.

The council relies heavily on Howard v. City of Boulder, 132 Colo. 401, 290 P.2d 237, but the case is distinguishable. In the Howard case the decision rested primarily on the proposition that the title of the proposed amendment appearing on the ballot was insufficient under the constitutional prvisions and so the people were not fully aware of what they were voting for, which of course is not involved here. The charter amendment called for two-year terms instead of six and removed from office three councilmen who had four years remaining on their terms and three who had two years remaining. The amendment also provided for a councilman from each of nine districts rather than nine councilmen at large as had been the case, required a councilman to be a taxpayer for two years before election instead of a mere elector as before, and reduced the residence requirement from five to three years. Although it was not necessary to the decision, the Colorado court looked to the effect on the six councilmen and stated the whole proceeding was really a device to unseat incumbents, and that the unseating was not merely incidental to a new system of representation on the council. We find it hard to understand how the Colorado court could with such assurance declare the charter amendment with its comprehensive changes of the type which clearly would be within the legislative discretion of the people to be "nothing more than a device to

unseat the incumbents". As stated earlier, we believe the proposed Kansas City charter amendments before us must be viewed as proposals to change the length of terms of elected officials generally and whatever the effect may be on whoever happens to be in office at the time of their adoption, if they are adopted by a vote of the people, such effect is only incidental to the change in the system.

We take judicial notice of the provisions of the Kansas City home rule charter, Art. VI, Sec. 19, 1945 Constitution, Fleshner v. Kansas City, 348 Mo. 978, 156 S.W.2d 706, and Sec. 488 of the charter itself invites us to do so. We note that Kansas City originally started out with four-year terms for the mayor, councilmen and municipal judges, Sec. 6 and Sec. 395, and with elections every four years, Sec. 417, Charter of 1926, but in the February 13, 1940 election by Sec. 489, these terms were changed to two years, and the terms of office of the incumbents were shortened so as to terminate April 10, 1940, which was two years short of the term for which they were elected. In the same election, Sec. 490 providing for elections to be held every two years also was adopted. Apparently there was no challenge to this in the courts and it seems to have been accepted without question by the electorate and all branches of the Kansas City municipal government. This might have been on the practical assumption that what the people gave they could take away. While of course not conclusive, this acceptance is somewhat persuasive of the constitutionality of the aforesaid 1940 charter amendments, State ex rel. Oliver v. Hunt, (Mo. Sup. banc) 247 S.W.2d 969, 972, which charter amendments were almost identical in language to those involved here. In 1948, the terms were changed to three years and then to four years, where they have since remained, Sec. 489, Art. XX, ratified March 9, 1948.

We conclude the authority and power to amend the Kansas City charter under Sec. 20, Art. VI, of the 1945 constitution, carries with it the right of the people to determine the length of term of their elected officials, even though it incidentally involves shortening the term of those already in office, and that the proposed charter amendments do not violate the spirit and intent of Sec. 12, Art. VII of the 1945 constitution and are not unconstitutional. The council thus did not have the right to refuse to pass the necessary ordinance to submit the amendments to a vote of the people, State ex rel. Lane v. Chambers, (Mo.App.) 353 S.W.2d 835.

The council also points to various contradictions between the proposed amendments and the present charter as to terms of municipal judges, the former prescribing a two-year term and the latter a four-year term, and also as to dates of municipal elections. What we have said as to the terms of the elected officials in general applies to the municipal judges,[6] as do the observations that the same sort of change from four to two years in their terms apparently was accomplished successfully in 1940. As to the matter of election dates, portions of the proposed amendments relate to the 1965 elections, which, of course, have already passed. But these 1965 portions are not essential to the balance of the ordinances, which relate to subsequent elections and officials. Proposed Sec. 490 calls for regular municipal elec-

6. Kansas City amended Sec. 395 of its charter in the November 1966 election regarding the selection and retention of municipal judges. Amended Sec. 395.7 calls for submission to the voters every four years, on a separate judicial ballot without party designation, of the question whether the particular judge shall be retained in office for another term. If the proposed amendments before us should be adopted by the electorate this would have the effect of changing those portions of amended Sec. 395 providing for the terms for municipal judges from four to two-year terms and would also necessarily change the retention elections from every four years to every two years.

tions on the last Tuesday in March beginning in 1967 and in each second year thereafter and also for primary elections on the fourth Tuesday preceding each municipal election. Thus, if the proposed amendments are adopted by the people, there will be no difficulty in following the procedure prescribed beginning with the 1969 election.

The order of the trial court is affirmed and the cause remanded to the circuit court for further proceedings not inconsistent herewith.

HENLEY, P. J., and HOLMAN, J., concur.

STORCKMAN, J., not sitting when cause was submitted.