Robert MOYNIHAN, Appellant,

v.

Patrick R. GUNN and City of Manchester, Respondents.

No. ED 87122.

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 22, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 11, 2006.

Application for Transfer Denied Nov. 21, 2006.

---

1. All statutory references are to RSMo.2000 except as otherwise indicated.

Patrick C. Dowd, Chesterfield, MO, for appellant.

Patrick R. Gunn, St. Louis, pro se.

Gino F. Battisti, St. Louis, MO, for respondent.

### *Introduction*

NANNETTE A. BAKER, Presiding Judge.

Robert Moynihan ("Moynihan") appeals a final judgment of the circuit court in

dismissing his taxpayer's petition for declaratory judgment and injunctive relief. He sought the declaratory judgment under Rule 87.02(a),[1] claiming that attorney Patrick R. Gunn ("Gunn") should be ordered to return compensation he received as city attorney of the City of Manchester ("the City") during the times he was allegedly compensated without proper appointment and that the City should be enjoined from paying Gunn any further compensation until he is properly appointed by the Board of Alderman ("the Board"). In Gunn's and the City's Motions to Dismiss, they claimed that Moynihan lacked standing and failed to state a claim. The trial court granted their Motions to Dismiss. Moynihan appealed. We find no error and affirm.

### Factual Background and Proceedings Below

On December 3, 2001, the Board enacted Ordinance Number 01–1309 appointing Gunn as city attorney for the City and authorizing Mayor Larry Miles ("Mayor Miles") to execute a contract delineating the city attorney's duties and rate of compensation.

On February 18, 2003, the Board enacted Ordinance Number 03–1407 ("Ordinance 03–1407"), which re-appointed Gunn as city attorney and authorized Mayor Miles to execute a contract for legal services between Gunn and the City. That contract was attached and incorporated to Ordinance 03–1407 as Exhibit A ("the Contract"). The Contract appointed Gunn as city attorney and set forth the terms and conditions of his employment.

Mayor Miles was re-elected and he was sworn in on April 19, 2004 as mayor of the City. In his Petition, Moynihan alleged that Ordinance 03–1407 expired on April 19, 2004 when Mayor Miles took office under a new mayoral term and Gunn continued to serve as City Attorney without appointment pursuant to Manchester Code ("Code") Section 2–142. Code Section 2–142 states that "[t]he city attorney shall be appointed by the mayor with the consent and approval of the majority of the members of the [Board]." Moynihan further alleged that since Gunn was compensated as city attorney without proper appointment for certain time periods, Gunn should be compelled to return to the City all fees earned during the periods he was not "officially" appointed.

The City and Gunn filed Motions to Dismiss Moynihan's Petition on the grounds that (1) Moynihan lacked standing to assert his claim pursuant to Rule 87.02; (2) his Petition failed to state a claim upon which relief could be granted because the proceedings are governed by the provisions of Ordinance 03–1407; and (3) Article VII, Section 12 of the Missouri Constitution ("Art.VII, Sec.12") permits Gunn, as an "officer," to continue to "hold office for the term thereof, and until [his] successor [ ][is] duly elected and appointed and qualified." On October 12, 2005, following oral argument, the court granted both Motions to Dismiss.

Moynihan raises four points on appeal. Moynihan argues that (1) he had standing; (2) Ordinance 03–1407 does not extend Gunn's term of appointment beyond that specified in Code Section 2–143; (3) Gunn was not entitled under Art. VII, Sec. 12 to continue in office; and (4) he can recover the compensation paid by the City to Gunn notwithstanding the benefit of Gunn's legal services that the City received cannot be returned. We find no error and affirm.

### Standard of Review

 Our standard of review when considering a trial court's grant of a mo-

---

**1.** All rule references are to Mo. Rules Civ. P.2004, unless otherwise indicated.

tion to dismiss is *de novo.* *Vogt v. Emmons,* 158 S.W.3d 243, 247 (Mo.App.E.D. 2005). When the trial court fails to state a basis for its dismissal, we presume the dismissal was based on at least one of the grounds stated in the motion to dismiss. *Summer Chase Second Addition Subdivision Homeowners Ass'n v. Taylor–Morley, Inc.,* 146 S.W.3d 411, 415 (Mo.App. E.D. 2004). Further, we can affirm the trial court's dismissal on any ground before the trial court in the motion to dismiss, even if that ground was not relied upon by the trial court in dismissing the claim. *Vogt,* 158 S.W.3d at 247. When reviewing the dismissal of a petition for failure to state a claim, appellate courts treat the facts contained in the petition as true and construe them liberally in favor of the plaintiffs. *Ste. Genevieve Sch. Dist. R II v. Bd. of Aldermen of City of Ste. Genevieve,* 66 S.W.3d 6, 11 (Mo. banc 2002).

### Taxpayer Standing

In his first point on appeal, Moynihan alleges that the trial court erred in dismissing his Petition on the ground that he lacked standing. He claims that he has standing because he was a taxpayer and that the City's compensation to Gunn after his appointment ended were direct illegal expenditures of public funds generated by taxes.

Specifically, Moynihan claims that the compensation paid to Gunn after April 19, 2004 violated Section 432.070 and the Code Section 2–145 because the City's Board did not authorize and approve a written contract with the said payments. In addition, no such contract was attached to an ordinance appointing Gunn as city attorney for the period after April 19, 2004, thereby constituting an illegal expenditure of public funds.

In analyzing whether Moynihan has standing, we find it necessary to analyze Moynihan's second and third points on appeal in conjunction with his first point on appeal. In his second point on appeal, Moynihan claims that Ordinance 03–1407 cannot be construed to extend Gunn's term of appointment beyond that specified in Code Section 2–143. In his third point on appeal, Moynihan claims that since a city attorney is not an "officer" for the purposes of Art. VII, Sec. 12, Art. VII, Sec. 12 is inapplicable and Gunn cannot continue in office under that constitutional provision. After reviewing the relevant ordinances, municipal codes, statutes, case law and the Missouri Constitution, we find that there were no "illegal expenditures of public funds" triggering taxpayer standing since Gunn and the City complied with Section 432.070 and an extension of Gunn's term as city attorney was constitutional under Art. VII, Sec. 12.

A taxpayer has standing to challenge an alleged illegal expenditure of public funds, absent fraud or compelling circumstances, if the taxpayer can show either a direct expenditure of funds generated through taxation, an increased levy in taxes, or a pecuniary loss attributable to the challenged action of the municipality. *Ste. Genevieve,* 66 S.W.3d at 10; *see also, Eastern Missouri Laborers Dist. Council v. St. Louis County,* 781 S.W.2d 43, 47 (Mo. banc 1989). Merely being a taxpayer is not enough to confer standing to bring an action against a municipality. *Ours v. City of Rolla,* 965 S.W.2d 343, 346 (Mo. App. S.D.1998). Reduced to its essence, standing roughly means that the parties seeking relief must have some personal interest at stake in the dispute, even if that interest is attenuated, slight or remote. *Ste. Genevieve,* 66 S.W.3d at 10. This "personal stake" is shown by alleging a threatened or actual injury resulting from the challenged action. *Bender v. Forest Park Forever, Inc.,* 142 S.W.3d 772,

773 (Mo.App. E.D.2004). The party seeking relief must show that he is sufficiently affected by the challenged action to justify consideration by the court and that the action violates his particular rights and not those of some third party. *Id.* at 773–74.

Section 432.070, as discussed above, states, in pertinent part, the following:

> No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.

Manchester Code Section 2–145 states that "[f]or the performance of the services set out in section 2–144 of this division,[2] the city attorney shall be paid a fee as specified by attached contract."

 In Missouri, it has been long held that "[t]he primary rule of statutory construction is to ascertain the intent ... from language used, to give effect to that intent if possible, and consider the words used in their plain and ordinary meaning." *State ex rel. Nixon v. QuikTrip Corp.*, 133 S.W.3d 33, 37 (Mo. banc 2004). When construing a city ordinance, the general rules of statutory construction apply. *Civil Serv. Comm'n of St. Louis v. Bd. of Aldermen of St. Louis*, 92 S.W.3d 785, 787 (Mo. banc 2003). Where a provision's language is clear, courts must give effect to its plain meaning and refrain from applying rules of construction unless there is some ambiguity. *Id.* "[O]rdinances are presumed to be valid and lawful ... and should be construed to uphold [their] validity unless the ordinance is expressly inconsistent or in irreconcilable conflict with the general law of the state." *McCollum v. Dir. of Revenue*, 906 S.W.2d 368, 369 (Mo. banc 1995). If two ordinances can reasonably be reconciled, the Missouri Supreme Court has held it is the court's duty to do so and give effect to both. *Levinson v. State*, 104 S.W.3d 409, 412 (Mo. banc 2003).

On February 18, 2003, the Board passed Ordinance 03–1407 re-appointing Gunn as city attorney.[3] Section Two of Ordinance 03–1407 states that "[t]he Mayor is hereby authorized to execute a contract for legal services with [Gunn], with such contract delineating the City Attorney's duties and rate of compensation. A copy of said contract is attached hereto and made a part hereof as Exhibit 'A.'" The Contract states that "[t]he appointment shall be effective upon execution of this [Exhibit A] and *shall remain in effect subject to the termination provisions specified herein.*" (emphasis added). The termination provision in the Contract states the following:

---

**2.** Manchester Code Section 2–144 refers to the duties of the city attorney. It states the following:

> [T]he city attorney shall have charge of all litigation in which the city is a party, represent the city in all legal matters and proceedings in which the city is a party or interested, or in which city officers are parties in their official capacity, advise the mayor and the board, any committee or member thereof, department heads and all other city officers and agencies as to legal questions affecting city interests, approve as to form all ordinances, contracts, deeds, bonds and other documents to be signed in the name of, or made to or with the city, attend board meetings as directed by the board and perform any other duties as the board may direct.

**3.** Gunn has continuously acted as the city attorney for the City since 1978.

The Mayor, with the consent of a majority of the members of [the Board], may remove the City Attorney from office at any time. In addition, the City Attorney can be removed from office at any time by a vote of two-thirds of the members of [the Board] independent of the Mayor's approval or recommendation. The City Attorney may resign at any time upon at least sixty (60) days' written notice to the Mayor and [the Board].

Under Code Section 2–143, "[t]he term of appointment of the city attorney shall *coincide* with the term of the mayor." (emphasis added). Because of the word "coincide," Moynihan argues that when Miles' 2003–2004 mayoral term ended on April 19, 2004, Gunn's term as city attorney should have ended as well. Consequently, he contends that Gunn's compensation as city attorney after April 19, 2004 violated Code Section 2–143. Moynihan argues that those payments to Gunn were illegal because of the "lack of a written contract authorized and approved by the Board and attached to an ordinance appointing Gunn city attorney."

 Allegations and proof of the illegal expenditure of public funds or the prospect of such illegal expenditures is an essential element to grant taxpayer standing. *Ours,* 965 S.W.2d at 346. Here, there is no illegal expenditure here because Art. VII, Sec. 12, which can extend the term of an "officer," applies to city attorneys such as Gunn. Art. VII, Sec. 12 concerns public officers' tenure of office. It states that "[e]xcept as provided in this constitution,

and subject to the right of resignation, *all officers shall hold office for the term thereof, and until their successors are duly elected or appointed and qualified.*" MO. CONST. of 1945, art. VII, Section 12 (2004) (emphasis added). In other words, unless there is a law to the contrary, all elected or appointed "officers" hold office during their official terms and may hold over in office until their successor is elected and appointed. The Missouri Supreme Court has held that an individual is an officer of the state only if that individual exercises the sovereign power of the state with some continuity and without control of a superior power other than the law. *Neel v. Strong,* 114 S.W.3d 272, 275 (Mo. App. E.D.2003).

 The City is a fourth class city.[4] Although Article VII does not define "officer," the Missouri Revised Statutes does refer to the city attorney as an "officer" in fourth class cities. In fourth class cities, "The mayor, with the consent and approval of the majority of the members of the board of aldermen, shall have power to appoint a treasurer, *city attorney,* city assessor, street commissioner and night watchman, *and such other officers* as he may be authorized by ordinance to appoint ...." Section 79.230 (emphasis added). Under a plain reading of Section 79.230, it is clear that a city attorney is an "officer." As such, during his tenure as city attorney, Gunn was an "officer" for the purposes of Art. VII, Sec. 12.

---

**4.** Section 72.040 states the following:

1. All cities and towns in this state containing five hundred and less than three thousand inhabitants, and all towns existing under any special law, and having less than five hundred inhabitants which shall elect to be cities of the fourth class, shall be cities of the fourth class.

2. Notwithstanding the population requirements of subsection 1 of this section, all incorporated villages as of August 13, 1982, may elect by majority vote of the voters therein to be a city of the fourth class and shall retain such classification at its option.

As of the last census, the City was designated as a fourth class city.

We also note that cases interpreting Art. VII, Sec. 12 have discussed the importance of the continuity of tenure. In *State ex rel. Voss v. Davis*, the Missouri Supreme Court noted the following:

> We believe the intent and purpose of Sec. 12 is to guarantee a continuity of tenure, to make sure that the public, for whose benefit the office has been created, will at all times have an incumbent to perform the duties thereof, to insure that the public interest will not suffer from the neglect of duties which would result for want of an incumbent and that public business will not be interrupted.

418 S.W.2d 163, 170 (Mo.1967). Further, it reasoned that the words "for the term thereof" in Art. VII, Sec. 12 mean for the term of the office, whatever it may be. *Id.* When so read and taken along with the final clause "and until their successors are duly elected or appointed and qualified," which is an integral part of the section, it then fulfills its purpose of insuring continuity and avoiding a lapse in an office, no matter whether the term is shortened or not. *Id.*

Considering the plain reading of Art. VII, Sec. 12 and Section 79.230, Gunn, as city attorney of the City, was clearly an "officer." The cases that Moynihan offers in his brief do not deal with city attorneys. Instead, the cases that Moynihan cites hold that a clerk of a court of appeals, *State ex rel. Webb v. Pigg*, 363 Mo. 133, 249 S.W.2d 435, 441 (1952), state-hired physicians, *State ex rel. Eli Lilly & Co. v. Gaertner*, 619 S.W.2d 761, 764 (Mo.App. E.D.1981), and special outside counsel to the Missouri Attorney General, *Neel*, 114 S.W.3d at 275, are not "officers" because they lack "sovereign power." Moynihan's interpretation that a city attorney is not an "officer" is counterintuitive to the plain reading and policy considerations of Art. VII, Sec. 12.

Since Gunn was an "officer," even if Moynihan correctly claimed that Gunn's appointment as city attorney expired when the mayor's term expired under Code Section 2–143, Art. VII, Sec. 12 would have extended Gunn's appointment until the mayor and the Board appointed his successor. Consequently, discussion of Moynihan's second point relied on claiming that Ordinance 03–1407 extended Gunn's term of appointment beyond that specified in Code Section 2–143 becomes unnecessary.

Moynihan's claim that he had standing fails because compensation paid to Gunn for serving as the City's attorney was not made for an illegal purpose and was not an illegal act. First, Gunn and the City complied with Section 432.070 because there was a contract. The Contract, attached as Exhibit A to Ordinance 03–1407 that the Board passed, is a contract between Gunn and the City. The Contract states, "The appointment shall be effective upon execution of this Contract and *shall remain in effect subject to the termination provisions specified herein.*" (emphasis added). After reviewing the record, there is nothing that any of the termination procedures as specified and required in the Contract occurred. Mayor Miles did not remove Gunn as city attorney with the consent of the Board; two-thirds of the Board did not vote to remove Gunn from office; and Gunn never resigned as city attorney. Second, the extension of his terms was constitutional under Art. VII, Sec. 12 because he was an "officer." Since Gunn's appointment was not terminated and an extension of his term was constitutional under Art. VII, Sec. 12, we cannot say that the City's compensation to Gunn for the services he continued to provide as city attorney under the Contract during the periods at issue were "illegal expenditures of public funds." Therefore, the trial court did not err in granting Gunn's and the City's Motions to

Dismiss because Moynihan does not have standing to bring this action. Given our disposition, our discussion of Moynihan's fourth point on appeal [5] is unnecessary.

### Conclusion

After reviewing the relevant ordinances, municipal codes, statutes, case law and the Missouri Constitution, we find that there were no "illegal expenditures of public funds" triggering taxpayer standing since Gunn and the City complied with Section 432.070 and an extension of Gunn's term as city attorney was constitutional under Art. VII, Sec. 12. Accordingly, the trial court did not err in granting Gunn's and the City's Motions to Dismiss. For the reasons discussed above, we find no error and affirm.

ROBERT G. DOWD, JR., and SHERRI B. SULLIVAN, JJ., concur.

---

5. In his fourth point on appeal, Moynihan claims that the trial court erred in dismissing his Petition because the benefit of Gunn's services that the City received could not be returned.